STATE *vs.* WIEBE J. REITSMA.

JULY 28, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. In this case the jury found the defendant guilty of aiding and assisting in the recording of a bet on a horse race, in violation of general laws 1938, chapter 612, § 35. The defendant's motion for a new trial was denied by the trial justice and the case is before this court on the defendant's exception to that ruling and on other exceptions taken during the trial.

It appears from the evidence that about 3:30 p. m. on August 19, 1939 two officers of the Providence police department went to a two story building which was used as a garage and which was situated on Broad street in the city of Providence. In the front, the first and second floors of this building were connected by a ramp, while in the rear there was a stairway to the second floor. A small office was located at the rear of the second floor near the stairway.

Frank M. Muckle, the owner of the premises and a witness for the state, testified that he rented the office a week or so before said date to a Mr. McCrillis who, after introducing the defendant as his manager, told Muckle in the defendant's presence that they were going to carry on a used tire business. The office was hired by McCrillis with the understanding that it was to be equipped with an unlisted business telephone and this apparently was done. Muckle also testified that during the time the defendant occupied the office the former saw no tires going up there, but that there was a constant ringing of the telephone which caused him to remark to the defendant: "You are getting quite a lot of phone calls", to which the defendant replied: "Business is business."

Muckle further testified that although he went up to the office from time to time, while the defendant occupied it, and saw various papers there, including the Armstrong sheet, later referred to, he gave no heed to what was going on and that he "didn't want no introduction to the job." On the day in question he had been in the office before the police came and the defendant and a woman were then writing and talking, but the witness paid no attention to what they were

saying or doing. When the police appeared, Muckle, who was then on the first floor,.shouted: "Scram, here comes the cops."

The evidence shows that following this warning officer Hayden went to the second floor by way of the ramp and Sergeant Gorman, by the stairway. As officer Hayden reached the top of the ramp, the defendant, followed by a woman, was a short distance from the office hurrying or running in the direction of said officer. The defendant then turned and went toward the stairway but stopped as Sergeant Gorman appeared at the top of the stairway. At that time the defendant crumpled and threw aside a sheet of yellow paper which he had in his hand. This paper was immediately picked up by officer Hayden and shortly thereafter was turned over by him to Sergeant Gorman. This paper was introduced in evidence as state's exhibit 1.

The officers, with the defendant and the woman, then went into the office, the furniture of which consisted of a desk, two chairs and a telephone. On the desk was a pencil and a newspaper, "The Morning Telegraph", which, though marked as state's exhibit 2 for identification, was never introduced in evidence.

A brief description of the state's exhibits is necessary for a proper understanding of their connection with the case. Exhibit 1 is a long sheet of yellow paper with columns for figures on each side. It has several entries in pencil, of which the following are samples:

| | | | | | | | |
|-------|----|---|-------------|---|---|---|-------|
| "1 00 | B | | Flying Car | x | 1 | x | 3.05 |
| 1 00 | — | | Affirmation | 1 | x | x | V |
| 4 00 | | | Chancer | 4 | x | x | 11.80"|

Exhibit 3 is a torn half sheet of paper similar to exhibit 1 with twenty-seven pencil entries of the following type:

| | | |
|------|---|------|
| "2-5 | - | 2 80 |
| 1-8 | - | 2 20 |
| 1-7 | - | 2 25"|

Exhibit 4 is an unused pad of the same kind of paper.

Exhibit 5 is the so-called Armstrong sheet, which is dated August 19, 1939, and is published by the Armstrong Racing Publications Inc., of New York. It contains information concerning horses which were to run on that day at various tracks, among which are Narragansett Park, Washington Park and Thistle Down. Part of such information is arranged for each race separately in columns under appropriate headings, and, reading from left to right, said columns contain the number of each horse entered in that race, its name, its post position, a reference to weight, the odds on said horse and the name of the jockey.

The entries on exhibit 1 have names which correspond to those of horses which were listed on the Armstrong sheet as running on that day in the first, second and third races at one of the above-mentioned tracks. Moreover, superimposed on the columns of printed matter on that sheet relating to the first race at Narragansett Park, the following appears written in pencil:

> "5 11.70 6 10 4 30
> 12 17 00 9 10
> 4 8 10"

Superimposed in the same manner on the information concerning the second race at Narragansett appears the following:

> "8 5 90 3 60 3 00
> 2 4 30 3 50
> 6 10 70"

There are also three figures in pencil to the left of the said columns containing information relative to the third race at Narragansett and to the first race at Washington Park, but no other figures are carried across the printed matter in reference to those races.

The defendant did not testify nor did he offer any evidence in his behalf. His bill of exceptions sets out eighty exceptions. However, according to his brief, they present four principal questions. The first of these, which is raised by exception 72, is whether the trial justice erred in not direct-

ing the jury to return a verdict of not guilty. The evidence in this case, although circumstantial, was properly submitted to the jury. Whether upon a consideration of all the evidence and the reasonable inferences to be drawn therefrom the defendant did aid and assist in the recording of a bet on a horse race was clearly a question of fact for the jury in the first instance. This exception is overruled.

The second question is whether the trial justice erred in admitting the state's exhibits 1, 3, 4 and 5 in evidence and in refusing to strike them from the record. This question is raised by exceptions 1, 7, 8, 13, 69, 71, 73 and 74. The defendant contends that the exhibits in question had no place in the evidence unless explained by someone qualified to tell what they were and what they meant and that no attempt was made by the state to have such an explanation given. We do not agree with this contention.

Considering these exhibits in the light of the defendant's conduct and all the surrounding circumstances, reasonable inferences make said exhibits self-explanatory. The mere written description here of the exhibits and of the markings thereon does not, in our opinion, as clearly depict the situation, from which the jury were entitled to draw inferences, as does an examination of the exhibits themselves. Comparing exhibit 1, the yellow paper which the defendant threw away, with exhibit 5, the Armstrong sheet, the inference is clear that the former was a record of some sort with reference to the horses which were to run at the tracks above mentioned, as listed in exhibit 5.

Considering the first column of penciled figures, written across exhibit 5 as hereinbefore set out, in reference to the first race at Narragansett, it is a reasonable inference that these figures represent the numbers of the horses which finished first, second and third, respectively, in that race; and that the other figures beside said numbers indicate the amounts which were payable to those who had bet on said horses to finish third or better accordingly as shown by the position of these figures. The same inference applies to the

figures superimposed on the printed matter relative to the second race at Narragansett.

In this connection it may be observed that the first race at Narragansett was listed to be run at 2:15 p. m. and the second race at 2:45 p. m. The third race, however, was listed for 3:15 p. m. and the first race at Washington Park at 3:20 p. m. It appears to be a reasonable inference that information of the results of the first two races, above referred to, had been received by the defendant when he was apprehended about 3:30 p. m., but that information of the results of the other two races mentioned had not then been completely received. Further, it may be noted that in the second race at Narragansett a horse named Affirmation was numbered 2 on the Armstrong sheet and appears in the pencil list of apparent winning numbers and the amounts payable with reference to that race. The name of such horse also appears several times on exhibit 1, the yellow paper which was crumpled up and thrown away by the defendant when he was apprehended, and the notations on that sheet, considered with other evidence, would support an inference that they were records of money bet on that horse in that race. The evidence, therefore, as represented by the exhibits in question was relevant and admissible.

The defendant further contends that exhibit 5, the Armstrong sheet, should have been stricken from the record because it was introduced in evidence under that number as part of an exhibit containing certain other papers, the contents of which were not disclosed to the jury and which, upon motion by the state, were allowed by the trial justice to be withdrawn, as in no way relating to the case. This contention is also without merit. There was obviously a mistake in including in said exhibit 5 certain irrelevant papers and then marking all with one number. The trial justice properly allowed the state to withdraw from exhibit 5 any papers which were clearly not connected with the case before the jury had seen them. The above exceptions raising the defendant's second question are therefore overruled.

The third question, raised by numerous exceptions, is whether the trial justice erred in allowing in evidence a conversation between Mr. Muckle and Mr. McCrillis in the presence of the defendant with reference to the hiring of the office, and also evidence respecting Muckle's personal observation of what was going on in that office during the week preceding the defendant's arrest. In relation to the conversation between Muckle and McCrillis, which was at least a week before the alleged offense charged, the defendant contends that he was not bound to make any comment at the time of the conversation and that the jury should not be allowed to conclude that he should have spoken.

In support of this contention he cites the case of *State* v. *Epstein*, 25 R. I. 131, which holds that the silence of a party *while under arrest* when charges or accusations are made against him cannot be used as sustaining the hypothesis of acquiescence. The comparison of the defendant's contention here with the authority upon which he relies shows the unsoundness of said contention. The defendant was not under arrest when the conversation in question took place in his presence. The conduct of the defendant and McCrillis, when the latter hired the office and introduced the former as his manager in the used tire business, was a circumstance that the jury could well consider in connection with all the other evidence in the case. There was no error in admitting this evidence, nor was there any error in allowing Muckle to testify as to the defendant's conduct up to the time of his arrest. All of defendant's exceptions on this point are overruled.

The defendant's fourth question, which is raised by exceptions 78 and 79, is whether the trial justice erred in his charge to the jury. These exceptions need not be discussed at length. We have carefully examined the charge and find that the law as stated therein was correct, the issues fairly presented to the jury, and the rights of the defendant protected. These exceptions are overruled.

The other exceptions which the defendant has briefed and argued have been examined by us and found to be untenable. Although he makes only a slight reference in his brief to the exception to the denial of his motion for a new trial, under the circumstances we will refer specifically to that exception, which is numbered 80.

The trial justice concludes his rescript, in which he denied the defendant's motion for a new trial, by saying: "In the opinion of the Court, upon all of the evidence offered the jury could reasonably find that the defendant was guilty beyond a reasonable doubt of the violation of law charged. Indeed, in the Court's judgment it was the only conclusion that the jury could reasonably reach." No claim is made by the defendant that the trial justice misconceived or overlooked any evidence in the case and the latter's approval of the verdict in such positive terms leaves no doubt that his independent consideration of the evidence led him without hesitation to the same conclusion as that reached by the jury. While the evidence was entirely circumstantial, we can think of no reasonable hypothesis, based upon said evidence, and none was suggested by the defendant in argument before us, which would be inconsistent with a finding of the defendant's guilt or consistent with that of his innocence. In the light of the exhibits which were in evidence and the conduct of the defendant throughout, as shown by all the testimony, we find no reason for disturbing the decision of the trial justice. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

CONDON, J., dissenting. I think that defendant's exceptions 1, 7, 8, 13, 69, 71, 73 and 74 should be sustained. Only on the theory that the jargon of race track gambling and its symbols and nomenclature are commonly known and understood, can it be reasonably held that a jury was competent, without explanatory testimony, to draw inferences from the state's exhibits 1, 3, 4 and 5 that the defendant was aiding and assisting in recording a bet on a horse race. There is no

warrant in law for such an assumption however much the knowledge of the technique of gambling on horse racing may have been disseminated since such gambling has been legalized at licensed race tracks in this state. Large numbers of our people are still uninitiated in this technique. It cannot be supposed that none of these are called to jury duty and that only those are called who are initiate. The majority opinion probably furnishes an adequate explanation of the state's exhibits and sufficiently correlates them to persuade the reader that the jury was justified in finding that the defendant was violating the law when arrested by the police. But such an explanation was denied the jury and that is the very ground of the defendant's exceptions.

The jury must find its verdict on sworn evidence. Such inferences as it may legitimately draw from documentary evidence which is not of a character whose import is commonly known and understood can only be based on like evidence of the meaning of such documents. Informed jurors cannot be permitted to supply this knowledge in the jury room to their uninformed brethren. The only way to be certain that the verdict of the jury is based upon knowledge derived from sworn evidence is to have that knowledge imparted to the jury from the witness stand. The defendant in the instant case was entitled to the benefit of this precaution. The denial of it was prejudicial error.

Aside from the exceptions considered above, there are other exceptions taken by the defendant which I am of the opinion are valid and ought to be sustained. However, I shall not discuss them in detail. Suffice it to say, on the view which I have taken of the exceptions above considered, it seems to me that here is a case in which the state has attempted to convict the defendant on circumstantial evidence and has not by such evidence excluded every other reasonable hypothesis except that of the guilt of the defendant.

Before the legalization of gambling at licensed race tracks in this state it might well have been difficult in a case like

the one at bar to say that the jury could find any other reasonable hypothesis, but with this particular kind of gambling now legalized it is far from difficult to find such an hypothesis on the facts in evidence here. The least the defendant is entitled to, therefore, is a new trial at which the state should be required to prove its case on sworn evidence and not leave it to conjecture by the jury.

ON MOTION FOR REARGUMENT.

OCTOBER 16, 1942.

PER CURIAM. After the filing of our opinion in this case, the defendant, by leave of court, filed a motion for reargument. We have carefully considered said motion and the reasons assigned therefor.

As the motion contains no matter which was not fully considered and passed upon before the filing of said opinion, the motion is denied and dismissed.