**308 A.2d 324.**

STATE *vs.* MAURICE R. LERNER.

JULY 31, 1973.

PRESENT: Roberts, C. J., Powers and Kelleher, JJ.

64

ROBERTS, C. J. On June 2, 1969, the grand jury returned three indictments against the defendant, Maurice R. Lerner. The indictments were a result of the fatal shootings of Rudolph Marfeo and Anthony Melei in a Providence market on April 20, 1968. Indictment No. 69-769 charged the defendant Lerner with conspiring, along with four other defendants, to murder Rudolph Marfeo. In Indictments Nos. 69-767 and 69-768 Lerner was charged with the murders of Marfeo and Melei, respectively. A detailed discussion of the factual context surrounding the slayings may be found in our opinion, *State* v. *Patriarca,* 112 R. I. 14, 308 A.2d 300 (1973), to which we shall make frequent reference throughout this opinion. On March 27, 1970, after trial in the Superior Court, the jury returned guilty verdicts against Lerner on all three charges. Before us now are the exceptions of the defendant Lerner to his convictions on all three indictments.

## I. Pretrial Discovery

### A.

The defendant made two pretrial motions for particulars, one with respect to the charges of murder contained in Indictments Nos. 69-767 and 69-768, and one with respect to the charge of conspiracy in Indictment No. 69-769. Certain of the particulars were denied by the trial justice, and defendant now contends that this denial constituted prejudicial error.

The defendant argues primarily that the statutory form used in indictments brought in this state under G. L. 1956 (1969 Reenactment) §12-12-7 does not meet the constitutional requirement of a defendant's right "to be informed of the nature and cause of the accusation" as is provided for in the sixth amendment to the Constitution of the

United States and art. I, sec. 10, of the constitution of this state. From that premise he argues that the intent of the Legislature in enacting §12-12-9 providing for bills of particulars was to establish a method for curing such indictments when constitutionally inadequate and that, therefore, defendant was entitled to particulars as a matter of right.

In the first place, we cannot agree that the purpose of §12-12-9 was to provide a method for curing constitutionally defective indictments. It is settled in this state that a bill of particulars cannot cure a constitutionally defective indictment. *State* v. *Brown,* 97 R.I. 115, 121, 196 A.2d 133, 137 (1963); *State* v. *Smith,* 56 R.I. 168, 182, 184 A. 494, 500 (1936). That section, however, makes it possible for a defendant, when confronted with an indictment that is constitutionally adequate but alleges the offense in general terms, to seek clarification as to the nature thereof by means of a bill of particulars as provided for in said §12-12-9. *State* v. *Berberian,* 100 R.I. 413, 216 A.2d 507 (1966).

Antecedent to a decision on defendant's contention of error is the inquiry whether short-form indictments authorized for use in this state by §12-12-7 are sufficient to inform a defendant of the nature and the cause of the accusation against him. The short-form statute, §12-12-7, was first enacted by P. L. 1932, ch. 1954, sec. 1. Thereafter, on June 1, 1936, one Frank S. Domanski was charged in an indictment drawn pursuant to that statute in the following form: "did rob one William J. Wilbek." *State* v. *Domanski,* 57 R.I. 500, 501, 190 A. 854, 855 (1937). This court in an exhaustive discussion of the constitutionality of the short-form statute held that an accused has a constitutional right to be clearly informed of the accusation against him so that he may defend the same and later plead a conviction or acquittal in bar of a subsequent charge for the same offense. The court went on to say

that no simplification of an indictment which deprives an accused of this constitutional guarantee could be sustained by any court. *Id.* at 504, 190 A. at 857.

We held, however, that the purpose of the statute was to simplify criminal procedure and not to change substantive law. Specifically referring to the use of the words "robbery" and "to rob," the court said: "These words, when used as words of art, include within themselves all the necessary component elements that constitute the offense. When the State charged that these defendants 'did rob one William J. Wilbek,' the defendants were left with no doubt of the nature and cause of the accusation against them." *Id.* at 505, 190 A. at 857.

We have held that it is within the legislative power to prescribe the manner and form in which an offense may be charged in the criminal process, recognizing, however, that an exercise of this power is limited by any pertinent constitutional provision and, in particular, art. I, sec. 10, of our state constitution and art. VI of the amendments to the federal Constitution. *State* v. *Brown, supra; State* v. *Scofield,* 87 R. I. 78, 138 A.2d 415 (1958); *State* v. *Smith, supra.*

In *Domanski* this court conceded that there is a constitutional limit to the simplification of criminal pleading and that the Legislature may have approached such limit in providing for short-form indictments in §12-12-7. But the defendant has failed to overcome the presumption of constitutionality arising out of the legislative enactment. *State* v. *Carufel,* 106 R. I. 739, 742, 263 A.2d 686, 688 (1970). However, we have clearly stated that we will not even by indirection reintroduce technicalities into the pleading of criminal offenses. The purpose of G. L. 1956, ch. 12 of title 12, was to eliminate such technicalities in criminal pleading. In *State* v. *Raposa,* 100 R. I. 516, 519, 217 A.2d 469, 471 (1966), we said: "We do not propose now to burden the

state with the task of alleging specifically in an indictment, such as the one under consideration, a description of every mechanism by which an assault intended to accomplish murder may be committed." We cannot agree that the short-form indictments here under consideration eroded defendant's constitutional right to be informed of the nature of the offense.

We turn, then, to defendant's contention that it was error to deny his motions for particulars. We said in *State* v. *Brown, supra,* that where a constitutionally valid indictment charges a defendant with an offense in terms of generality, he may be supplied with further information by way of a bill of particulars as a matter of right. Section 12-12-9[1] intends that where an indictment fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare a defense, the court *shall,* upon motion, order the prosecution to furnish him with such particulars. In short, then, the indictments here being constitutional, the statute provides defendant with the right to a bill of particulars that will clarify the complaint when it is so lacking in particularity as to make difficult the preparation of an efficient defense. In *State* v. *Domanski, supra* at 505, 190 A. at 857, we held that §12-12-9 is designed to give full protection to an accused and should be liberally construed. That the indictments under consideration here, while constitutionally valid, were so lacking in particularity is clear, and the motions for particulars should have been

---

[1]General Laws 1956 (1969 Reenactment) §12-12-9 reads, in part, as follows: "When an indictment or complaint charges the offense in accordance with the provisions of §§12-12-3 to 12-12-8, inclusive, but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense the court shall, upon motion, order the prosecution to furnish him with such particulars, * * * and shall not require the prosecution to disclose its witnesses or evidence nor to do any more than to require the prosecution to furnish the defendant with such facts as fairly disclose the actual charge with which the defendant is accused."

granted as of right if the particulars sought were within the scope of the statute.

However, the statute, §12-12-9, specifically excepts from its mandate the disclosure of the identity of the witnesses or of the evidence that the prosecution intends to use. We note that its thrust is limited to the furnishing of such facts as fairly disclose the actual offense of which the defendant is accused. Viewing the motions for particulars in the light of this limitation on the thrust of the statute, it is clear that defendant was asking for a disclosure of what act or acts defendant performed which would establish (1) that he murdered Marfeo and Melei, (2) that he was the principal in the crime of murder, and (3) that thereafter defendant "did contrive, confederate, and conspire" to commit the offense. We find inescapable the conclusion that the request contained in the motions for particulars sought a disclosure of evidentiary facts in the possession of the prosecution. Being persuaded that such disclosure is not within the purview of the statute under consideration, we hold that it was not error to deny the motions.

The defendant has argued vigorously that the conspiracy indictment was peculiarly insufficient to satisfy the constitutional requirements. As we understand him, he is contending that the conspiracy indictment was entirely conclusionary, vague, and indefinite. However, we considered a similar contention in *State* v. *Gilman,* 110 R. I. 207, 212-13, 291 A.2d 425, 429 (1972). There we held that an indictment charging conspiracy need not set forth the object of the conspiracy with the same particularity that would be required for an indictment charging the commission of a crime which is the object of the conspiracy, citing *Wong Tai* v. *United States,* 273 U. S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), and *Brown* v. *United States,* 403 F.2d 489 (5th Cir. 1968).

## B.

The defendant contends that it was error on the part of the trial justice to deny his motions for an inspection of the grand jury minutes. As we understand him, defendant argues that on the basis of his interpretation of *Dennis* v. *United States*, 384 U. S. 855, 868, 873-74, 86 S. Ct. 1840, 1848, 1850-51, 16 L.Ed.2d 973, 982, 985-86 (1966), he was entitled as a matter of right to inspect the minutes of the grand jury and the testimony of witnesses given therein prior to trial.

We are unable to agree that a defendant is entitled as of right to examine the minutes of testimony given by a trial witness to a grand jury prior to trial. In *State* v. *Ouimette*, 110 R. I. 747, 763, 298 A.2d 124, 134-35 (1972), we noted explicitly that a defendant who would examine the minutes of testimony given to a grand jury must show a particularized need therefor. We do not construe the *Dennis* case as does defendant, and, in our opinion, the rule stated in *Ouimette* was entirely consistent with the *Dennis* opinion.

In *Ouimette* we laid down the rule that while such a defendant need not show actual inconsistencies between the testimony of the witness before the grand jury and at trial, he must establish a particularized need for such an inspection. Circumstances which would demonstrate such a particularized need are, in part at least, set out in *State* v. *Carillo*, 112 R. I. 6, 307 A.2d 773 (1973). We noted that a showing of particularized need must be made to the trial justice to whose discretion such a motion is addressed. Our judgment as to whether the discretion of the trial court was abused by the denial of such a motion will depend upon whether defense counsel met the burden of establishing circumstances which demonstrate the need for the inspection of such minutes. An examination of the record in the instant case does not disclose that defendant complied with this obligation.

It is important, in our opinion, to note that defendant apparently had in his possession a copy of certain minutes of the grand jury that were "furnished to me yesterday." Upon his motion, that copy was marked as Exhibit J for identification. We assume, then, that defendant was in possession of a record of the grand jury testimony of the witness Kelley at the time he began his cross-examination of that witness. We find these exceptions to be without merit.

## C.

The defendant's pretrial motion to be supplied with the names and addresses of all witnesses that the prosecution expected to call at trial was denied, the court saying: "It is always our practice in Rhode Island to deny that motion." Contending that this was error, defendant directs our attention to *Gregory* v. *United States*, 369 F.2d 185, 187-88 (D. C. Cir. 1966). There the Circuit Court was considering a statute, 18 U.S.C. §3432, which, in substance, requires that the defendant in a capital case shall be furnished with a list of the names and addresses of witnesses to be called by the government at trial. In *Gregory* the court held that the purpose of this statute was to assist defense counsel in the preparation of a defense by making witnesses available to be interviewed. The defendant, however, concedes that the statute regulating federal criminal procedure is not binding on the states.

The defendant, as we understand him, argues that, in enacting that statute, Congress intended to give constitutional dimensions to the right of a defendant in a capital case to be furnished with the identity of the prosecution's witnesses. Apparently he contends that to deny such information is to violate the due process clause of the fourteenth amendment of the United States Constitution. In our opinion, Congress, in enacting §3432, intended only to establish a discovery procedure to be binding on the federal

74

courts and not to declare the right to such information to be of constitutional proportions.

It is significant, in our opinion, that the Legislature of this state has not up to the present deemed it necessary to the effective administration of justice to enact a statute of similar purpose to 18 U.S.C. §3432. In 1969 our Legislature provided by statute that a defendant, upon demand, be allowed to inspect tangible evidence in the possession of the prosecution and, where appropriate, to make copies thereof. General Laws 1956 (1969 Reenactment) §12-17-16. However, this court, in construing that section, has limited its application to tangible evidence as such and specifically excluded lists disclosing the identity of witnesses from its scope. *See State* v. *Ricci,* 107 R. I. 582, 590-91, 268 A.2d 692, 697-98 (1970). It is reasonable to assume that the legislative inaction was motivated by compelling state interests in securing the effective administration of justice. In such circumstances we find this exception to be without merit.

### D.

The defendant filed a motion entitled "Motion for Pretrial Examination of John J. Kelley." The prosecution conceded at the pretrial hearing that defendant sought to require the prosecution to produce Kelley before the court in order to permit defendant to interrogate him. The motion was denied, and defendant contends that this constituted prejudicial error.

In support of this contention defendant directs our attention to *State* v. *Papa,* 32 R. I. 453, 80 A. 12 (1911). In that case the defendant had been indicted for assault with a dangerous weapon. It was disclosed that counsel for the defendant had talked in his law office with a boy who had been a witness to the assault and who at that time was under summons by the state to testify at the trial. In instructing the jury, the trial justice said that it was unfortu-

nate that the defendant's attorney should have done this, saying: " 'The State's witnesses should be left alone by the defendant.' " This court held that the instruction constituted prejudicial error, an attorney for a defendant having not only the right but the duty to investigate the case and to interview as many as possible of the eyewitnesses to the assault in order to assist him in arriving at the truth. The court said: "The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf, he has also the right either personally or by attorney to ascertain what their testimony will be." *Id.* at 459, 80 A. at 15.

*Papa* clearly stands for the proposition that art. I, sec. 10, of the constitution of this state, conferring upon a defendant the right to have compulsory process to obtain witnesses to testify in his behalf, secures to such defendant the right to engage in reasonable investigation for the purpose of ascertaining what the testimony of a potential witness would be. However, we must read *Papa* in the light of the issue presented to the court in that case, that is, whether it was improper for a defendant to interview an eyewitness to an assault who at that time was under summons by the prosecution to testify at the trial. The court held that the right to make such an investigation was constitutionally guaranteed. It is obvious that the principle enunciated in *Papa* endures, but the question with which we are presented in the instant case is whether it extends to contemporary pretrial discovery procedures.

The question raised by defendant here is whether it would be violative of that constitutional right for a court, an appropriate motion being made therefor, to refuse to order the prosecution to produce for pretrial investigation by the defendant a witness who is being held in custody, whether protective or otherwise. What we must now decide is whether art. I, sec. 10, viewed in the context of

present-day pretrial discovery procedures, requires the prosecution to share access to its evidence with the defense in order that the search, for truth be given reality. As the Supreme Court has said: "In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations." *Dennis* v. *United States, supra* at 873, 86 S.Ct. at 1851, 16 L.Ed.2d at 985-86.

We hold that art. I, sec. 10, secures. to a defendant the opportunity to conduct an adequate pretrial investigation designed to assist in the preparation of a defense and to that end be permitted to interview or interrogate a consenting witness held in the custody of the state. The right, however, is necessarily subject to some reasonable limitations consistent with the need for the security of the state's witnesses and a compelling public interest in the effective administration of criminal justice. Consequently, we hold that a defendant so moving must establish that the person in. custody may or will be a witness at the trial and that his testimony may be relevant or material on the question of the defendant's guilt or innocence.

In so holding we take a view consistent with the rule generally applied to pretrial discovery motions. *See Commonwealth* v. *Balliro,* 349 Mass. 505, 515-18, 209 N.E.2d 308, 314-16 (1965). The court in *Balliro* concluded that the right to such pretrial examination of a witness held in the custody of the state was secured by the Massachusetts constitution. The court rejected arguments that such a right should be exercised only upon a showing by the defendant that the request was not an attempt to conduct a "fishing expedition." We concur with the view taken by the Massachusetts court that the right is limited to persons who consent to such interrogation by defense counsel.

*Commonwealth* v. *Carita,* 356 Mass. 132, 142-43, 249 N.E. 2d 5, 11 (1969).

We are of the opinion that such a motion requires the trial justice to order the state, if the witness be in its custody, to produce him in court, there to be instructed as to his right to withhold consent to such interrogation. In our opinion, it further requires that where such proceedings take place, the answers of the witness will then determine whether an interview is to take place and, in the discretion of the trial justice, whether a record thereof should be kept. *Commonwealth* v. *French,* 357 Mass. 356, 399, 259 N.E.2d 195, 227 (1970); *Commonwealth* v. *Doherty,* 353 Mass. 197, 210-11, 229 N.E.2d 267, 276 (1967).

We are aware that the prosecutor filed an affidavit, in which he deposed on oath that the witness Kelley was in the custody of federal authorities and not subject to his orders at that time. He further deposed therein that the witness Kelley had informed him on a number of occasions that he "* * * did not desire to be interviewed by any defense counsel prior to his giving testimony in this trial." It is clear that, in substance, these matters, if established to the satisfaction of the trial justice at a hearing called for such purpose, would justify a denial of the motion. However, it does not appear that such a hearing was held, and, therefore, we feel that the affidavit does not offer sufficient proof of the allegations set out therein to have warranted a denial of the motion. In our opinion, then, the trial justice erred in denying defendant's motion for a pretrial interrogation of defendant Kelley.

The state argues, however, that the ruling, if error, did not prejudice defendant, and with this contention we agree. Here defendant was not compelled to prepare a defense or, more particularly, to undertake cross-examination of Kelley without substantial prior knowledge of the significance and thrust of testimony that would be adduced

78

through him at trial. The defendant had a record of Kelley's testimony at the prior bail hearing and had been provided just prior to cross-examination at trial with a transcript of Kelley's testimony before the grand jury.

While we think that the right to such pretrial interrogation is of constitutional dimensions, it is not the kind of constitutional right that is so basic to a fair and impartial trial that its infraction can never be treated as harmless error. Not all error committed in the course of a trial that violates the Constitution automatically calls for a reversal of the verdict. *Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State* v. *Camerlin,* 108 R.I. 524, 277 A.2d 291 (1971).

The instant error was not of a character that would tend to defeat the right of defendant to a fair and impartial jury. It did not occur during trial in the presence of the jury but merely affected a pretrial discovery procedure. In short, we conclude the error, although of constitutional proportions, was harmless beyond a reasonable doubt in view of the fact that Kelley's testimony on two prior occasions was available to the defense. We, therefore, hold that this contention is without merit.

### E.

The defendant moved prior to trial that he be furnished with all evidence favorable to him. It is to be conceded that defendant has a constitutional right to be informed as to the existence of exculpatory evidence in the possession of the prosecution. *Giles* v. *Maryland,* 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737, 758 (1967); *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963). The instant case, however, unlike those cited above, is not one in which a defendant has been prejudiced by the actual suppression of exonerating or exculpatory evidence by the prosecution.

This motion raises a question as to the extent to which the state is obligated to disclose its possession of exculpatory evidence on a pretrial motion therefor. In our opinion, however, it is not necessary to pass upon the extent of that obligation in the instant case. The state disclaimed any knowledge of possession of any specific evidence which would tend to exonerate defendant. The defendant concedes that he is without knowledge as to whether the prosecution had in its possession evidence that would tend to exonerate defendant but "infers" that it does.

This contention is so vague as to lead us to conclude that it will not suffice to raise the constitutional issue. The defendant here obviously is speculating as to the existence of such evidence and the state's nondisclosure thereof. Mere suspicion that the state has such evidence and has not disclosed it is insufficient to move this court to consider the issue. The contention is without merit.

### F.

The defendant also moved that the court order the prosecution to furnish him with all evidence and information obtained during the investigation of the crimes with which he was charged by state and federal officials. Immediately upon the motion being made, the state informed the court that it had no illegally obtained evidence. Again, we are confronted with the question as to the extent of the state's duty to inform a defendant what it has in the way of illegally obtained evidence. As we have already noted, on the motion the prosecution informed the court that it had no such evidence. This, in our opinion, constituted a sufficient answer to the question posed by the motion and justified the court in denying any formal filing by the state of such a disclaimer of possession of such evidence. The contention is without merit.

## G.

During the pretrial hearings defendant moved, first, to be permitted to examine statements that were made or might have been made by the witness Kelley to the police or the FBI and, second, to examine diagrams made by the police with the assistance of Kelley at the scene of the murder. These motions were denied, and defendant contends that such action was prejudicial.

The state, as we understand it, argues that defendant established no specific need for being permitted to examine the statements that Kelley made or might have made to the FBI or to the police. The state argues further that, contrary to defendant's argument, the diagrams are not tangible evidence within the contemplation of §12-17-16, being a record developed from testimonial evidence which subsequently in *State* v. *Ricci*, 107 R.I. 582, 590-91, 268 A.2d 692, 697-98 (1970), this court held was not tangible evidence as contemplated by that statute.

We concur in defendant's contention that a number of constitutional guarantees in varying degrees support defendant's request for pretrial discovery. It is true that in recent years the courts have shown an increasing tendency to give effect to these constitutional rights to pretrial discovery. Here, however, we face some difficulty. In the first place, an examination of the transcript fails to disclose with any specification statements that Kelley either made or might have made or circumstances from which it could be reasonably inferred that he had made statements to either police agency which were withheld from the defense. Again, the question whether diagrams made by the police with the assistance of Kelley during pretrial investigation of the crime are a product of testimonial evidence within the meaning of §12-17-16 is one that we need not answer in the circumstances of this case.

We are fully persuaded that defendant has failed to establish that in the circumstances here he was prejudiced by the ruling of the court denying these motions to such an extent as to impair his constitutional right to due process of law and a fair and impartial trial. These contentions are without merit.

## H.

The defendant, as we understand him, contends also that §12-17-16, the tangible evidence statute, so-called, if construed as limiting permissible pretrial discovery, would be unconstitutional. His argument is that such a construction would make available to defendants on pretrial motions for discovery only tangible evidence and would deny them access to other types of evidence that might be within the possession of the state. This, he argues, would not be within the legislative prerogative.

This argument suffers from the obvious infirmity of being based on pure conjecture. There is another infirmity in the position taken by defendant. Nowhere in the record does it appear that the constitutionality of §12-17-16 was challenged in the court below at any time in such a manner that the court would be able to make a ruling thereon. In other words, defendant's contention as to the possible unconstitutionality of the statute was raised in this court for the first time, and it is the well-established practice in this state that a defendant in a criminal case cannot challenge the constitutionality of a legislative enactment in this court unless he has first raised the issue on the record before the trial court with particularity and clarity. *State* v. *Bower*, 109 R.I. 198, 199-200, 283 A.2d 39, 40 (1971); *State* v. *DiMuccio*, 106 R.I. 219, 222, 258 A.2d 67, 69 (1969).

## II. Severance

### A.

The defendant made several motions for severance, all of which were denied. However, he now contends that the denial of certain of those motions was prejudicial to him when during the trial he was deprived of his sixth amendment right of confrontation under the theory laid down in *Bruton* v. *United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The defendant directs our attention to the testimony of Kelley concerning the conversation that took place in Methuen, Massachusetts, some months after the termination of the conspiracy. There, Kelley testified, Fairbrothers said: "No one could get out of the car any faster than Lerner." The defendant now argues that because he was unable to cross-examine the declarant, Fairbrothers, he was deprived of his right of confrontation during the trial. He concludes from this that he was prejudiced by the loss of the right to confrontation because of the denial of the severance motions originally made. He contends that this court should now find that it was prejudicial error to have denied the motions to sever. In so arguing, he relies on *Drew* v. *United States*, 331 F.2d 85 (D.C. Cir. 1964). In *State* v. *Patriarca*, 112 R. I. 14, 308 A.2d 300 (1973), we concluded that *Bruton* had no application in the context of these cases.

Clearly, defendant was not deprived of the right of confrontation on the issue of whether Fairbrothers actually made the statement related by Kelley. Neither a hearsay nor a confrontation question would have arisen had Kelley's testimony been used to prove merely that such a statement had been made by Fairbrothers. "The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements." *Dutton* v. *Evans*, 400

U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213, 226 (1970). A confrontation issue arises here because Fairbrothers' statement implicitly identifies this defendant as one of the perpetrators of the crime. However, following the view taken by the United States Supreme Court in *Dutton,* we conclude that there was no denial of the right of confrontation on the issue of Lerner's presence at the scene of the slayings. The Court in *Dutton* made it clear that there are "* * * indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton* v. *Evans, supra,* at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227.

We attach significance to the fact that Fairbrothers did not in express terms charge this defendant with participation in the crime. His statement was not an admission made under custodial interrogation but rather appears to have been made on a social occasion without any apparent incentive to attempt to involve this defendant in the crime. Equally significant is the fact that Fairbrothers had knowledge of the identity and the role of the other participants in the double slaying. Such was abundantly established by other testimony given by Kelley, who was cross-examined extensively thereon. We cannot agree that any cross-examination of Fairbrothers would have persuaded the fact finders that he was not in a position to know that this defendant had been involved in the commission of the crime. In other words, going to the reliability of Fairbrothers' statement, it does not appear that he had any reason to lie on the occasion that he made the statement. It was a spontaneous utterance, and it was against his penal interests to make it.

Where a statement is made within the presence and hearing of an accused which is incriminatory or accusatory in character and such statement is not denied by him, the

statement and the fact of his failure to deny are admissible as an admission of the statement's truth. *State* v. *Reitsma,* 68 R.I. 310, 316, 27 A.2d 312, 315 (1942); 3 Wharton, *Criminal Evidence* §700 at 501-04 (13th ed. 1973). In ruling on the admissibility of such statements, the trial justice should consider whether (1) the statement was incriminating or accusatory; (2) that it was one to which an innocent person in the situation of the defendant would reply; (3) that it was made within the presence and hearing of the defendant; (4) that he understood the meaning of the statement; and (5) that he had an opportunity to deny or reply to the statement. 3 Wharton, *supra,* §702 at 507-08. It is clear on the record here that all of the factors were present when the statements in issue here were made. Therefore, we conclude that the statements were admissible against defendant Lerner as well as against the declarant. This situation is, of course, distinguishable from that where accusatory statements are made against a defendant while in custody or during the course of interrogation. *State* v. *Epstein,* 25 R.I. 131, 55 A. 204 (1903).

The primary thrust of the confrontation clause, in our opinion, is the promotion of the accuracy of the truth-determining process in criminal trials. In other words, it secures to a defendant the right to test the statements of witnesses against him through cross-examination. Thus, it was intended to give the fact finder a satisfactory basis for evaluating the truth of the prior statement. *California* v. *Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936-37, 26 L.Ed.2d 489, 499 (1970). The defendant here clearly exercised his right to confrontation effectively through cross-examination on the factual question as to whether Kelley had actually heard Fairbrothers make the statements ascribed to him by Kelley. That cross-examination of Fairbrothers could conceivably have persuaded the jury that the statement, though made, might have been unre-

liable is totally unrealistic. We find, therefore, that the indicia of the reliability of the statement to which we have referred permitted it to be placed before the jury even though there was no confrontation of the declarant, it clearly not being grossly unreliable. These exceptions are overruled.

## B.

We turn to defendant's contention that he was entitled to a severance of the indictments pending against him from those pending against Raymond L. S. Patriarca. He argues that the denial of his motions to sever the indictments prejudiced him because almost every prospective juror was aware of Patriarca's alleged activities in organized crime and submits that he was entitled to a trial in which the reputation of defendant Patriarca would not affect him.

In *State* v. *Patriarca, supra,* we examined the effect of the knowledge of potential jurors concerning the defendant Patriarca's activities in organized crime in New England and concluded that we had not been shown the existence of a "pattern of deep and bitter prejudice" against the defendant Patriarca in the community. We further conceded that adverse publicity could "* * * in unusual circumstances, fatally infect a trial when it enters the courtroom indelibly embedded in the minds of the jurors." *Rideau* v. *Louisiana,* 373 U.S. 723, 730, 83 S.Ct. 1417, 1420, 10 L.Ed.2d 663, 667 (1963). We concluded, however, that no showing had been made of the existence of such prejudice as would preclude impartiality on the part of jurors.

We are unable to subscribe to the proposition that while the knowledge of potential jurors concerning the reputation of Patriarca as a leader in organized crime did not operate to deprive him of a fair trial by an impartial jury, such knowledge did so prejudice the jury in the case of

his co-defendants. We do not intend to extend this opinion by a repetitious analysis of the cases on which we based our conclusion that Patriarca had not been prejudiced by the knowledge of the jurors of the role he is alleged to have played in organized crime. We simply say that assuming that the jurors were aware of the reputation of Patriarca as a leader in organized crime, it does not follow that for that reason this defendant was entitled to a severance of the indictments. It is generally held that the mere fact that a defendant is tried with a co-defendant who has a criminal record or an unsavory reputation does not thereby prejudice him when his motion to sever is denied. *United States* v. *Barber,* 296 F.Supp. 795 (D. Del. 1969); *United States* v. *Boyance,* 30 F.R.D. 146 (E.D. Pa. 1962); *United States* v. *Stracuzza,* 158 F.Supp. 522 (S.D. N.Y. 1958).

We are not overlooking defendant's argument relating to the establishment of guilt by association. It is true that in our jurisprudence guilt is personal. *Scales* v. *United States,* 367 U.S. 203, 224, 81 S.Ct. 1469, 1485, 6 L.Ed.2d 782, 799 (1961). However, we are not aware that *Scales* supports defendant's contention concerning guilt by association. There the Court said that punishment on a status or on conduct can be justified only by reference to the relationship of that status or conduct to other concededly criminal activity and that relationship must be sufficiently substantial to satisfy the concept of personal guilt in order to withstand attack under the due process clause of the fifth amendment to the United States Constitution. That such a substantial relationship has been established in this case seems clear, there being an abundance of evidence that all of the defendants participated together in a joint criminal enterprise. We find that this defendant's contentions of error inhering in the denial of his motions to sever the indictments are without merit.

## C.

The defendant contends that G. L. 1956 (1969 Reenactment) §9-10-18, in effect at the time of this trial in 1970, was unconstitutionally applied by the Superior Court, thereby depriving defendant of equal protection under the fourteenth amendment. He argues, but not convincingly, that, he having been tried jointly with the other defendants, the state was given an opportunity to exercise five times as many peremptory challenges as were allotted to this defendant. Were he tried alone, he urges, he would have stood on an equal footing with the state with respect to peremptory challenges. Contending that defendants in this state are often tried alone, the disparity clearly violates the equal protection clause of the fourteenth amendment.

In the first place, we find it difficult to accept defendant's contention that this statute constitutes a classification within the contemplation of the equal protection clause of the fourteenth amendment. The fact is that it provides that each party may peremptorily challenge any qualified juror called for the trial not exceeding a ratio of one in four. It being well established law that persons tried jointly constitute a party, we cannot agree that the statute makes the distinction alleged by defendant.

However that may be, we cannot agree that the statute, construed as defendant contends it was, arbitrarily discriminates against defendants tried jointly in favor of defendants tried alone. It has been held that the fourteenth amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. In *McGowan* v. *Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), the Court said: "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective."

The state's purpose in enacting the statute is stated clearly in *State* v. *Hathaway,* 52 R.I. 492, 500, 161 A. 366, 369 (1932). There the court said: "This statute gave the defendant the privilege of saying that he should not be tried by some particular jurors. but it did not give him the right to select the jurors who were to try him." We are not persuaded that the classification here, if any, rests upon grounds irrelevant to that legislative purpose. *See Skinner* v. *Oklahoma,* 316 U.S. 535, 539-40, 62 S.Ct. 1110, 1112-13, 86 L.Ed. 1655, 1659-60 (1942).

Finally, it is well settled that state legislatures are presumed to have acted within their constitutional powers despite the fact that in practice their laws may result in some inequality. The burden of establishing the unconstitutionality of a statute rests on him who asserts it, and courts may not declare a legislative enactment invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the Legislature. *Imperial Car Rental Corp.* v. *Lussier,* 97 R.I. 168, 196 A.2d 728 (1964).

Here defendant has failed to rebut the presumption of constitutionality referred to above. He has not shown, in our opinion, that the statute unreasonably and arbitrarily discriminates against defendants tried jointly and those tried singularly.

### III. Motions to Pass

#### A.

The defendant contends that it was error to deny his motion to pass the case because of the unavailability of a necessary and material witness, Alfredo Rossi, father of defendant Rossi. This issue was raised in the case of *State* v. *Patriarca, supra,* and every facet thereof was considered and found to be without merit.

## B.

The defendant contends also that he was prejudiced by pervasive massive publicity prior to trial, which made it impossible to obtain an impartial jury that could decide the case solely on the evidence adduced. However, an examination of the record discloses that the publicity to which reference was made generally related to the alleged role of leadership exercised by Patriarca in organized crime in New England. It is clear from the record of a pretrial hearing that a substantial amount of evidence was offered concerning newspaper accounts of Patriarca's alleged criminal career and of his association with organized crime. An examination of the voir dire discloses that few, if any, of the jurors knew anything about the defendants other than Patriarca. It is true that a substantial number of them did have some awareness of Patriarca and of his alleged career, but on the voir dire each of them satisfied the court that, despite this knowledge, they were capable of hearing the evidence with an open mind and reaching a conclusion as to the guilt or innocence of the defendants solely on the basis of the evidence presented at the trial. It is our further opinion that defendant failed to meet the burden of establishing the existence of prejudice sufficient to deprive him of a fair and impartial trial. *Irvin* v. *Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751, 756 (1961).

The issue here is the same with which we were confronted in *State* v. *Patriarca, supra,* where it was considered in depth by this court and where we concluded that the publicity to which reference was made did not become so embedded in the minds of potential jurors as to make it impossible for him to have a fair trial with an impartial jury. If that was true in the case of Patriarca, it certainly is true in the case of this defendant. We find this contention to be without merit.

## IV. Right to Counsel

The defendant Lerner contends that he was denied effective representation of counsel of his choosing when a pretrial hearing on defense motions was held on a day when one of his attorneys was not present. Ronald J. Chisholm of the Massachusetts bar had been admitted upon motion *pro hac vice* to represent defendant Lerner. However, Mr. Chisholm's admission had been conditioned upon his obtaining the assistance of local counsel. Edward F. Choiniere of the Rhode Island bar entered his appearance for defendant Lerner with, we assume, defendant's agreement. There is in the record nothing that would preclude our assuming that this defendant concurred in the engagement of Mr. Choiniere as co-counsel, and for this reason we reject the contention that he was not represented at the pretrial hearing on January 5, 1970, by counsel of his own choosing.

The record indicates that the trial justice had little notice of Mr. Chisholm's prior appointment before the Massachusetts Supreme Judicial Court on January 5, 1970. In view of Mr. Chisholm's failure to properly inform the trial justice of his unavailability, the full and adequate representation provided by co-counsel at the hearing, as well as the opportunity granted Mr. Chisholm to be heard on several motions the following day, we are unable to conclude that defendant was prejudiced by the trial justice's decision to proceed with the scheduled hearing. *See People* v. *Hayes*, 52 Ill.2d 170, 175, 287 N.E.2d 465, 467 (1972).

Both *Long* v. *State*, 119 Ga.App. 82, 166 S.E.2d 365 (1969), and *People* v. *Payne*, 46 Ill.2d 585, 264 N.E.2d 167 (1970), cited by defendant are distinguishable. In each of those cases, the court imposed counsel upon the defendant for the actual trial of his case; and moreover, the assigned attorney had no opportunity to prepare. Mr. Choiniere

had entered his appearance nearly a month prior to the hearing.

## V. Public Trial

The defendant contends that the trial justice erred in denying his motion to conduct the trial in a larger courtroom and thus insure his right to a public trial guaranteed by the sixth and fourteenth amendments to the United States Constitution. No basis is established in the record that the size of the courtroom in any way deprived defendant of a fair trial. The trial justice pointed to factors which militated against a change of courtroom and in the sound exercise of his discretion denied this motion.

While it is suggested that the public would be excluded from the trial, nothing in the record establishes that the public actually was excluded. *State* v. *Cyrulik,* 100 R. I. 282, 214 A.2d 382 (1965). On the basis of the record and the briefs presented, we are unable to conclude that defendant was prejudiced in any way by the size of the courtroom.

## VI. Trial by Jury

### A.

The defendant Lerner contends that the denial by the trial justice of motions to excuse certain of the potential jurors for cause was error. The reference is to a number of potential jurors who expressed some familiarity with the background of Patriarca. In *State* v. *Patriarca, supra,* this same contention was raised and considered by this court. We are of the opinion in the instant case, as we were in *Patriarca,* that no error inhered in these rulings.

### B.

Again, defendant Lerner urges that it was error for the trial justice to refuse to ask potential jurors concerning whether or not they had read certain books in which Patriarca was named as a "Mafia" leader. In *State* v. *Patriarca,*

*supra,* this issue was also considered, and we concluded that the voir dire was properly conducted and that there was no abuse of discretion on the part of the trial justice in denying such motion. Our opinion in that case is controlling here, and we find the contention to be without merit.

### C.

In this case defendant Lerner raises a question as to whether the trial justice erred in refusing to allow defendant one peremptory challenge for every four jurors called for each of the three indictments on which he was tried. Based on our understanding of the record we, therefore, conclude that the trial justice did in fact allow the collective defendants the prescribed number of peremptory challenges for each of the three indictments upon which they were tried. We have considered this matter fully and reached the conclusion that the trial justice did not err in the construction he gave to §9-10-18. See Section II C, *supra,* and *State* v. *Patriarca, supra.*

### D.

We are utterly unable to agree that any prejudice resulted to this defendant by reason of the presence at the courthouse of numerous state and federal officers at the time of the trial. It is well settled that the trial court has full discretion to take any reasonable measures to secure the safety of jurors, and we cannot concur in defendant's argument that the measures taken here went beyond that which was reasonable.

### E.

The defendant Lerner further contends that it was error to deny him permission to inspect the records of the jury commissioner which included personal data with respect to potential jurors. This matter was treated exhaustively in *State* v. *Patriarca, supra,* where we concluded that no prejudicial error inhered in the denial in the circumstances. For

that reason we feel that it is without merit in the instant case.

## F.

The trial justice instructed the jury that "* * * whether a witness is on the stand wearing a clergyman's collar or whether he comes in in a hurry from a garage where he may work, summoned at the last minute, before you with a dirty shirt and dirty hands, that is not what you judge a witness by — it's by what you think of what he has to say." The defendant alleges that this instruction constituted prejudicial error. He contends that the witness's occupation is a valid basis upon which to judge credibility and, inasmuch as a Roman Catholic priest provided testimony for the defense, he was particularly prejudiced.

It is clear that in the entire context of the trial justice's statement to the jurors, his instruction to them on judging credibility of witnesses was perfectly proper. The very authority which the defense cites for a contrary conclusion, 1 Wharton, *Criminal Evidence* §7 at 6 (13th ed. 1973), points out that "* * * the primary measure of [a witness's] credibility is whether the testimony is probable or improbable when judged by the common experience of mankind." This, in essence, is precisely the point of the trial justice's instruction.

## G.

The defendant alleges that the trial justice committed prejudicial error in failing to instruct the veniremen not to discuss the case upon leaving the courtroom. The trial justice did instruct the jury not to discuss the case as soon as 12 jurors were selected. In view of the cases which hold that the failure to so instruct until one or two days into trial does not constitute prejudicial error, it is clear that the trial justice's action in this case does not constitute error. *United States* v. *Viale*, 312 F.2d 595, 602 (2d Cir.

1963); *Myres v. United States,* 174 F.2d 329, 334-35 (8th Cir. 1949).

## VII.   Exclusion of Evidence

During the course of trial, defendants Lerner and Rossi were directed, upon motion of the prosecutor, to try on jackets which had been identified as those worn on the day of the murders. The defendant contends that this procedure was violative of the fifth amendment's proscription against compelling a defendant to testify against himself. In *Holt* v. *United States,* 218 U.S. 245, 252-53, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030 (1910), Mr. Justice Holmes termed essentially the same argument to be "* * * an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *See also Schmerber* v. *California,* 384 U.S. 757, 763-64, 86 S.Ct. 1826, 1831-32, 16 L.Ed.2d 908, 915-16 (1966).

In view of the fact that defendants were not asked to don the jackets for identification purposes, but to demonstrate only that the clothing fit the defendants, Lerner's contention that this procedure was violative of the due process standards established by *Stovall* v. *Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1957), is totally without merit.

## B.

The defendant contends that the testimony of Lucille F. Hasney, the daughter of Rudolph Marfeo, constituted hearsay and, therefore, was improperly admitted. Mrs.

Hasney testified that Patriarca threatened her father and Anthony Melei in her presence. Threats of harm made to the victim of a crime are admissible through the testimony of a third party, though hearsay, as a declaration against interest particularly when the threats are recounted by a person in whose presence they were made. *Commonwealth v. DelValle*, 351 Mass. 489, 495, 221 N.E.2d 922, 926 (1966). The evidence was clearly admissible against Patriarca and, therefore, was properly presented at trial.

These threats made by Patriarca failed to implicate Lerner or any of the co-defendants. Therefore, the trial justice did not abuse his discretion in denying Lerner's motion for severance. Finally, defendant alleges that the trial justice erred in failing to give a cautionary instruction which would explicitly limit to Patriarca any implications drawn from the statements. The defendant neither asked for such an instruction, nor did he challenge the sufficiency of the charge to the jury in this area. In his charge, the trial justice indicated that the indictment alleged that a conspiracy existed between March 1 and April 20, 1968, and that any evidence admissible under the co-conspirator rule must relate to that period of time. Therefore, it should have been clear to the jury that testimony concerning threats made by Patriarca early in 1968 were admissible only against the declarant. The defense must have been satisfied that this fact was sufficiently clear to the jury, since they failed to object to that portion of the charge.

## C. - E.

The defendant objects to the admission of certain statements by the witness Kelley concerning the conversations in Methuen, Massachusetts. This issue has already been fully discussed in Section II A of this opinion. The defendant also raises certain objections concerning the rebuttal testimony of Reverend Joseph Invernizzi and Thomas Marfeo. The issues raised by these points were

fully covered in *State* v. *Patriarca, supra.* In the instant case, as in *Patriarca,* we find that no error inhered in these rulings.

## VIII. Interviewing of Witnesses

The defendant argues that it was error to refuse to allow counsel to speak to defense witness Frank Marfeo during a recess in the course of his cross-examination. It is clear that the trial justice's instruction to the witness not to talk to anyone about the case during the recess was within the sound exercise of his discretion. *Zambarano* v. *Massachusetts Turnpike Authority,* 350 Mass. 485, 487, 215 N.E. 2d 652, 653 (1966); *People* v. *Prevost,* 219 Mich. 233, 242, 189 N.W. 92, 95 (1922).

## IX. Jury Instructions

### A.

The defendant alleges as error a reference by the trial justice to defendants as criminals during the course of his instructions to the jury. It is clear, when read in the context of the pertinent portion of the charge, that the trial justice in no way suggested that defendants were criminals. Instead, while instructing the jurors of their duty to do equal justice between the state and defendants, he charged them that "* * * if the defendants, or any of them, are guilty under the law and the evidence and you find them not guilty * * * you will be freeing criminals * * *. On the other hand, if upon the law and the evidence, defendants, or any of them, are not guilty, and you find them guilty, again you will be doing a disservice to the cause of justice in violation of your oath and unjustly condemning a fellow human being to imprisonment."

It is clear within this context that the trial justice made no reference to the guilt or innocence of these particular defendants. The cases cited by defendant in his brief under this point, *Hall* v. *United States,* 150 U.S. 76, 14 S.Ct. 22,

37 L.Ed. 1003 (1893), and *United States* v. *Strauss,* 443 F.2d 986 (1st Cir. 1971), deal with remarks made by prosecutors during the course of their closing statements as to prior criminal activity of the defendants and have no relevance in this context.

### B.

The defendant next contends that the trial justice erred in instructing the jury as to the meaning of "reasonable doubt." In particular, he objects to the instruction that a reasonable doubt is "* * * not a fanciful doubt nor a mere possible doubt. It's an actual, substantial doubt * * *." Once again, within the context of the trial justice's instructions concerning the meaning of reasonable doubt, we find nothing particularly repugnant about his use of the word "substantial" and find support for our conclusion in the decisions of various courts. *United States* v. *Heap,* 345 F.2d 170, 171 (2d Cir. 1965).

### C.

This defendant asserts that the trial justice erred in instructing the jury that they would be home by Easter. This issue was considered in *State* v. *Patriarca, supra,* and we held it was without merit. We feel that that decision is controlling in the instant case.

### D.

The defendant's reference to the Boswell charge constituting error was also considered at length in *State* v. *Patriarca, supra,* where it was held to be without merit.

## X.  New Trial Motion

Finally, defendant contends that the trial justice erred in denying his motion for a new trial. He argues that the verdict of guilty returned against him was inconsistent with other verdicts in the case. As we understand him, he is arguing that the inconsistency arises from the fact that he was found guilty on two counts charging him with

murder, while the other defendants were not found guilty on indictments charging them with murder and being accessories to murder on the basis of the same evidence, that of the witness John J. Kelley.

We cannot agree that this is a situation where the jury returned inconsistent verdicts on the same evidence. The jury did convict this defendant on two counts of murder. However, the jury did not return verdicts of not guilty with respect to the other defendants on the substantive charges. Rather, it did not return any verdicts on the indictments charging them, respectively, with murder and with being accessories. In these circumstances, we are constrained to conclude that there was no inconsistency between the verdict returned against this defendant and the failure to return verdicts with respect to the other defendants.

The validity of the verdict finding Lerner guilty of murder was raised in his motion for a new trial. It is incumbent, then, upon this court to determine whether the evidence in the record is sufficient to prove defendant guilty of the crime charged beyond a reasonable doubt. *State* v. *Contreras,* 105 R. I. 523, 531, 253 A.2d 612, 617 (1969). Under *Contreras* it is the obligation of this court, when reviewing the decision of a trial court on a motion for a new trial, to leave the role of the fact finder to the jury and the trial justice. In determining whether the evidence is sufficient to support the verdict, we are required to accept as true all competent evidence which, if believed, would support a verdict finding the defendant guilty beyond a reasonable doubt.

Approaching the defendant's contention in this light, it is clear that the testimony of Kelley, while it implicated all of the defendants in some degree in the case, was highly incriminatory of defendant Lerner. He testified that it was Lerner who first approached him and asked him to

plan the slayings. His testimony placed Lerner at the scene of the first attempt to murder Marfeo. He further testified that Lerner in conversations with him reflected his presence at the scene of the murders when he told of leaving the guns in the "get-away" vehicle after having "wiped [them] clean." While it is to be conceded that Kelley's testimony placed defendants Fairbrothers and Rossi in the car that left Triggs Memorial Park to rendezvous with Marfeo and Melei, it did not directly involve either Patriarca or Sciarra in the actual slayings at all.

There is no doubt that under the rule, taking the testimony of Kelley relating to the defendant Lerner as true, it was sufficient to support a verdict of guilty beyond a reasonable doubt on the murder charge in the case of this defendant. *State* v. *Maloney*, 109 R. I. 166, 170, 283 A.2d 34, 38 (1971). In view of the primary thrust of Kelley's testimony and its probative force, it is reasonable to infer that the jury found that evidence sufficient to hold the defendant Lerner guilty of murder but at the same time not persuasive that the murder charges brought against the other defendants had been established beyond a reasonable doubt. We find no error in the denial of the motion for a new trial, and this exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court.

Petition to reargue denied.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Paolino, Mr. Justice Joslin, and Mr. Justice Doris did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Ronald J. Chisholm,* Boston, Mass., for defendant.