283 A.2d 39.
STATE *vs.* RICHARD S. BOWER.

NOVEMBER 5, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. On September 11, 1969, Richard S. Bower was found guilty by a jury in the Superior Court on an indictment which charged him with having in his possession and control a firearm, to wit, a pistol, after having been convicted of a crime of violence, to wit, breaking and entering a building in the nighttime with intent to commit larceny in violation of G. L. 1956, §11-47-5, as enacted by P. L. 1959, ch. 75, sec. 1. He is now here on a bill of exceptions.

Bower's initial contention, advanced here for the first time, is that the statute under which he was indicted infringes upon the right to keep and bear arms which is guaranteed to the people by article II of amendments to the Constitution of the United States and by article I, section 22 of the state constitution. We do not reach that contention since established practice in this state precludes a

defendant in a criminal case from challenging the constitutionality of a legislative enactment in this court unless he has first raised that issue on the record before the trial court with particularity and with clarity. *State* v. *DiMuccio,* 106 R. I. 219, 222, 258 A.2d 67, 69 (1969).

Bower also assigns as error several rulings the trial justice made while two of the state's witnesses were testifying.[1] One of those witnesses was an employee of the Bureau of Criminal Identification; the other was a state probation officer. Both identified defendant as the same Richard S. Bower who had previously been convicted of a crime of violence under indictment No. 32245, and, in addition, both testified that he had been implicated in other crimes.

In questioning the propriety of the testimony of those witnesses, Bower discriminates between that relating to his conviction of the offense charged in indictment No. 32245 and that concerning his other criminal actions. While he agrees that the former was admissible as a necessary link in the chain of proof of the crime with which he was charged, *State* v. *Colangelo,* 55 R. I. 170, 174, 179 A. 147, 149 (1935); 1 Wharton, *Criminal Evidence* §233 at 498-99 (12th ed. 1955), he nonetheless contends that testimony

---

[1]Thus, the probation officer testified to his admission of another "break" as follows:

"Q Involved in what relation to indictment 32245?

"A Well, there were two breaks against him. I'm not sure which of the two breaks was 32245, but he admitted he had been involved in the two breaks."

The Bureau of Criminal Identification employee read to the jury the following entries which appeared on defendant's arrest and fingerprint record:

"On 7-27-63 Cranston Police Department, larceny of auto tires; 7-29-63 pleaded nolo, six months at the A.C.I., appealed, $1,000 surety; committed. 7-27-63, Cranston Police Department, B. & E. nighttime; 7-29-63, waived examination and bound over to the grand jury, $2,000 surety; committed. 7-27-63, Cranston, possession of burglar tools; 7-29-63 pleaded not guilty, trial 8-15-63; committed."

of his other criminal activity should have been excluded under the general rule which says that evidence of a defendant's involvement in any crimes which are separate and distinct from that at issue is unavailable to assist in obtaining a conviction. *State* v. *Durkee,* 68 R. I. 73, 78, 26 A.2d 604, 607 (1942); *State* v. *Russo,* 49 R. I. 305, 307, 142 A. 543, 544 (1928). Although the state does not take issue with the distinction Bower draws, and concedes error on the admission of evidence, it invokes the harmless-error rule and argues that there was no reasonable possibility that the improper evidence could have influenced the jury's verdict. *State* v. *Mancini,* 108 R. I. 261, 267-68, 274 A.2d 742, 745 (1971).

For this court to ascertain at this stage of these proceedings what influenced the jury is obviously a difficult task. We are not privy to the jurors' discussions or to the considerations which prompted their verdict. Nonetheless, we must decide whether the tainted evidence can reasonably be said to have been a contributing factor. In making that decision, we look to the record with a view to determining what in our judgment would have been the probable impact of the improper evidence on the minds of an average jury. Once that judgment is made, we will assume that the objectionable evidence had a similar impact on the jury in this case. *Harrington* v. *California,* 395 U. S. 250, 254, 89 S. Ct. 1726, 1728, 23 L.Ed.2d 284, 287-88 (1969); *Chapman* v. *California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy* v. *Connecticut,* 375 U. S. 85, 84 S. Ct. 229, 11 L.Ed.2d 171 (1963). Although the cited Supreme Court decisions enunciate a harmless-error rule that must be applied whenever federal constitutional rights are at issue, there is little, if any, difference between

that rule and the one which generally obtains in this state.[2] *Compare Harrington* v. *California; Chapman* v. *California,* and *Fahy* v. *Connecticut,* all *supra, with State* v. *Mancini, supra.*

When we apply these principles here, we find there was only one controverted factual issue for the jury to decide: whether or not Bower had a firearm in his possession and control when he was apprehended. The state's version was supplied by three police officers who, in sum, testified that Bower took a pistol out of his jacket pocket and threw it to the ground, and that fifteen 38-caliber shells were found in his jacket pocket. The evidence to the contrary came from a friend of Bower's who was his companion on the night of the alleged offense and from a bystander. The friend agreed that a pistol was found on the ground behind defendant, but he denied having seen Bower put his hand in his pocket or throw anything; the bystander saw somebody throw something shiny, but seemed certain that it was not Bower. Bower, himself, did not testify, and accordingly, his credibility did not enter into the resolution of the evidentiary conflict.

---

[2]A similar comparison was made by Mr. Justice Black in *Chapman* v. *California,* 386 U. S. at 24, 87 S. Ct. at 828, 17 L.Ed.2d at 710:

"There is little, if any, difference between our statement in *Fahy* v. *Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, although achieving the same result as that aimed at in our *Fahy* case."

On the foregoing record, the only substantial question for the jury was how to resolve this conflict in the evidence. Whether evidence of Bower's prior disposition to engage in criminal activities assisted in its resolution depends to some extent on the frame of reference in which that evidence was received and considered. Here the point of reference is found in the trial justice's comprehensive cautionary instructions. Those instructions were initially given when the trial justice overruled Bower's objections to the admission of the challenged evidence and denied his motions to pass the case; they were subsequently repeated in the charge to the jury. Each time, the trial justice carefully cautioned the jury that the evidence of Bower's breaking and entering was available only for the limited purpose of proving the "* * * exact identity between the defendant sitting in this courtroom and the person who was convicted of breaking and entering * * *" under indictment No. 32245; and each time he also instructed the jury to disregard completely and to pay no attention whatsoever to any evidence of Bower's other criminal activity.

In deciding whether the improperly admitted evidence of Bower's prior criminal activities can reasonably be said to have created an influencing atmosphere of prejudice, we are mindful that there was but a single controverted factual issue in the case, that evidence of Bower's prior conviction of a crime of violence was properly admitted, and that evidence of his other criminal activities came into the case accompanied by twice-given, cautionary instructions. On such a record, it is our judgment that it is not reasonably possible that the objectionable evidence would either detract an average jury's attention from or influence its decision on the ultimate issue of guilt or innocence, or on its preliminary resolution of the single, substantial, controverted issue in the case: did Bower have a firearm in his control and possession? In the circumstances, it is our

belief that the error complained of was harmless beyond a reasonable doubt.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

Motion to reargue denied.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Bennett R. Gallo,* Special Asst. Attorney General, for petitioner.

*James Cardono,* Public Defender, *Paul E. Kelley,* Asst. Public Defender, for defendant.