STATE

v.

Yale UDIN.

No. 78–440–C.A.

Supreme Court of Rhode Island.

Aug. 1, 1980.

Dennis J. Roberts II, Atty. Gen., Barry N. Capalbo, Sp. Asst. Atty. Gen., for plaintiff.

Connors & Kilguss, Thomas C. Mullaney, Jr., Providence, for defendant.

## OPINION

MURRAY, Justice.

The defendant Yale Udin was the owner of Blanding and Blanding. Drug Company (Blanding and Blanding or company) which operated two pharmacies located in Providence. On May 18, 1977, the Rhode Island Division of Drug Control, Department of Health, conducted an audit of the company's Broad Street store. The auditors uncovered alleged irregularities that prompted the state to file an eleven-count indictment against the defendant. A Superior Court jury convicted the defendant on one count for obtaining money under false pretenses in violation of G.L.1956 (1969 Reenactment) §§ 11–41–4 and 11–41–5, on four counts for giving false documents to a public employee in violation of § 11–18–1, and on one count for violating G.L.1956 (1968 Reenactment) § 21–28–4.02, as enacted by P.L.1974, ch. 183, § 2, for failing to preserve copies of official written orders for controlled substances as required by § 21–28–3.11. On appeal to this court, the defendant raises several claims of error.

### I

First, defendant challenges his conviction under § 21–28–4.02 [1] of the Uniform Controlled Substances Act (act) for failing to preserve copies of orders for controlled substances as required by § 21–28–3.11 of that act. He asserts that the trial justice's instructions construing the scope of § 21–28–3.11 were incorrect, and alternatively he claims that the crime charged was unconstitutionally vague because § 21–28–3.11 failed to provide him with adequate notice that he was required to preserve copies of orders for controlled substances. We shall address the constitutional question only if

---

1. General Laws 1956 (1968 Reenactment) § 21–28–4.02(A)(3), as enacted by P.L.1974, ch. 183, § 2, makes the failure to keep or furnish any order form as required under the Uniform Controlled Substances Act subject to criminal sanctions.

we determine that the trial justice's instructions were proper. *See State v. Simmons*, 114 R.I. 16, 18, 327 A.2d 843, 844 (1974). Thus, the threshold question concerns the propriety of the trial justice's construction of § 21–28–3.11 of the act.

In adopting the act, the Legislature sought to regulate, control, and trace the flow of substances which pose a danger to public health. *State v. Mann*, R.I., 382 A.2d 1319, 1321 (1978). To ensure the availability of controlled substances for medical and research needs and yet to prevent the improper diversion of such substances,[2] the Legislature created Article III of the Uniform Controlled Substances Act, §§ 21–28–3.01–21–28–3.30. Article III establishes a comprehensive system for registration and regulation of every person[3] who manufactures, distributes, prescribes, administers, or dispenses any controlled substance within this state. Section 21–28–3.02.

Insofar as is relevant to this case, §§ 21–28–3.02 and 21–28–3.03(c) within Article III require licensed practitioners to obtain annually a registration issued by the State Director of Health to dispense any controlled substances. Pharmacies are subject to this requirement because they are included in the definition of a practitioner in § 21–28–1.02(29)(b). The company's Broad Street pharmacy was registered with the State Department of Health with Yale Udin's signature appearing on the registration applications.

Within Article III the Legislature also included a system of administrative controls to trace and regulate the flow of controlled substances among registrants. The extensive scheme includes § 21–28–3.10, which authorizes duly licensed manufacturers and wholesalers to sell and distribute controlled substances to practitioners, among others, on official written orders. The statutory provision here at issue, § 21–28–3.11,[4] prescribes rules for signing, presenting, and preserving such official written orders.[5]

At defendant's trial, the State Administrator of the Division of Drug Control (administrator) testified that the division pos-

---

**2.** *See* G.L.1956 (1968 Reenactment) § 21–28–1.-01 B.4., as enacted by P.L.1974, ch. 183, § 2.

**3.** The word "person" is defined in G.L.1956 (1968 Reenactment) § 21–28–1.02(27), as enacted by P.L.1974, ch. 183, § 2, to mean "any corporation, association, partnership, or one or more individuals."

**4.** General Laws 1956 (1968 Reenactment) § 21–28–3.11, as enacted by P.L.1974, ch. 183, § 2, provides that:

"An official written order for any controlled substance shall be signed in duplicate by the person giving said order or by his duly authorized agent. The original shall be presented to the person who sells or distributes the controlled substances named therein. In the event of the acceptance of such order by said person, each party to the transaction shall preserve his copy of such order for a period of two (2) years in such a way as to be readily accessible for inspection by any public officer or employee engaged in the enforcement of this chapter. It shall be deemed a compliance with this section if the parties to the transaction have complied with the federal law respecting the requirements governing the use of order forms."

The Legislature derived this section from § 21–28–9 of the Uniform Narcotic Drug Act, then encoded in title 21, chapter 28 of the 1956 General Laws. By P.L.1974, ch. 183, § 1, the Legislature repealed the Uniform Drug Act in its entirety and enacted in its place the Uniform Controlled Substances Act in which § 21–28–3.-11 is contained. Section 21–28–3.11 does not differ materially from § 21–28–9, repealed by P.L.1974, ch. 183, § 1.

**5.** The definitional section of the Uniform Controlled Substances Act, G.L.1956 (1968 Reenactment) § 21–28–1.02, as enacted by P.L.1974, ch. 183, § 2, does not include a definition of the term "official written order." A definition is, however, provided in the since-repealed Uniform Narcotic Drug Act, which also contains the precursive statute for § 21–28–3.11. *See* footnote 4 *supra*. We therefore look to that definition as an aid in determining the meaning of the term in § 21–28–3.11. " 'Official written order' means an order written on a form provided for that purpose by the United States commissioner of narcotics, under any laws of the United States making provision therefor, if such order forms are authorized and required by federal law * * *." Section 21–28–2(17), since repealed by P.L.1974, ch. 183, § 1. The last sentence of § 21–28–3.11 indicates the continued viability of this definition because it announces that compliance with federal law respecting the requirements governing the use of order forms shall be deemed in compliance with the requirements of § 21–28–3.11.

sessed copies of official written orders [6] that Blanding and Blanding had presented to suppliers during the pertinent time period to procure controlled substances for the Broad Street store.[7] The administrator testified that during the audit on May 18, 1977, he had served an administrative subpoena upon defendant that ordered defendant to produce, among other records, the store's copies of official written orders executed over the previous two-year period. Presumably those copies would have corresponded to the copies in the Division of Drug Control's possession. On cross-examination, the administrator testified that the store's copies of official written orders executed during that period were not among the records produced.

Following the presentation of evidence, the trial justice instructed the jury to consider two factual elements to determine whether defendant had failed to comply with § 21–28–3.11 in violation of § 21–28–4.02. The first concerned whether defendant was a party to the pertinent transactions for controlled substances. The trial justice instructed the members of the jury to determine whether either defendant or Blanding and Blanding was a party to any pertinent transaction for controlled substances. He told them that if they were to determine that the company was such a party, they should determine then, in addition, whether defendant was the owner of Blanding and Blanding. If the jury were to find that the state had proven the first

element beyond a reasonable doubt, the trial justice instructed them to consider next a second element. That element consisted of determining whether one or more of the copies of the relevant DEA 222C forms were not preserved for inspection.

The defendant's exception as a matter of statutory construction to the trial justice's instructions centers on who is the "party to the transaction" charged with preserving copies of official written orders. He notes that the term "party" is not included in § 21–28–1.02, the definitional section of the act, and claims that the legislative intent concerning its meaning in § 21–28–3.11 is ambiguous. Basing his argument on an application of § 21–28–3.11 which he hopes will absolve him of liability rather than offer an analysis of the statutory language, defendant argues that "party" refers solely to the person in charge of ordering and receiving controlled substances.[8] To rule otherwise, defendant claims, would impose strict criminal liability in connection with the preservation of copies of official written orders on persons who own pharmacies. Thus, defendant contends that the trial justice should have instructed the jury to consider whether he was subject to the requirements of § 21–28–3.11 only if they determined that he was the person who ordered and received controlled substances.

The state argues in rebuttal that defendant seeks to apply the statute far too narrowly, thereby limiting its scope inconsist-

---

**6.** The official written orders were executed in triplicate on DEA Form 222C issued by the United States Department of Justice Drug Enforcement Administration (DEA) pursuant to 21 U.S.C.A. § 828 (1972) and 21 C.F.R. §§ 1305.01–1305.05 (1979). Federal law prohibits any person from distributing certain controlled substances to another except upon presentation of DEA Form 222C. 21 U.S.C.A. § 828; 21 C.F.R. §§ 1305.03. A purchaser must submit copy 1 and copy 2 of the order form to the supplier and retain copy 3 in his own files. 21 C.F.R. §§ 1305.09(a). A supplier is then required to forward copy 2 to the DEA. 21 C.F.R. §§ 1305.09(d).

According to the administrator's trial testimony, the DEA eventually transmits copy 2 of orders submitted by Rhode Island pharmacies to the State Division of Drug Control. The

Division of Drug Control then uses those copies to monitor compliance with the requirements of G.L.1956 (1968 Reenactment) § 21–28–3.11, as enacted by P.L.1974, ch. 183, § 2, concerning orders for drugs listed in Schedule II of the Uniform Controlled Substances Act. *See* §§ 21–28–2.04 and 21–28–2.08, as amended by P.L.1979, ch. 168, § 1.

**7.** The copies were subsequently introduced into evidence by the defense for the purpose of showing that all were signed by either Joseph Gray or Norman Caron, both of whom were registered pharmacists employed by Blanding and Blanding on Broad Street.

**8.** The defendant presented some evidence that employees were in charge of those functions. See footnote 7 *supra.*

ently with legislative intent. The state claims, on the assumption that defendant acted through his employees in all phases of his business, that he was the "person giving said order" through "his duly authorized agent." The state concludes that defendant was therefore a "party to the transaction" required to "preserve his copy of such order for a period of two (2) years." So construed, the state argues that § 21–28–3.11 places the burden of preserving copies of official written orders on defendant. The state maintains further that delegation of that task to employees did not relieve defendant of the ultimate responsibility for ensuring that such copies were preserved. Thus, according to the state, defendant's failure to perform the duty imposed under § 21–28–3.11 subjects him to sanctions provided in § 21–28–4.02.

We adhere to the elementary canon of statutory construction which requires us to discern statutory intent from the words of the statute if they are free from ambiguity and express a reasonable meaning. *State v. Angell*, R.I., 405 A.2d 10, 15 (1979); *Little v. Conflict of Interest Commission*, R.I., 397 A.2d 884, 887 (1979). When ascertaining legislative intent, we consider statutory language in its contextual relation to the section as a whole. *Easton v. Fessenden*, 65 R.I. 259, 264, 14 A.2d 508, 511 (1940); *see Flanagan v. Pierce Chevrolet, Inc.*, R.I., 410 A.2d 428 (1980); *Deignan v. Cowan Plastics Products Corporation*, 99 R.I. 193, 196, 206 A.2d 534, 536 (1965). Although when read in isolation the words "party to the transaction" are susceptible of ambiguity, we do not believe they are ambiguous when parsed contextually.

In § 21–28–3.11 the Legislature provided that

"An official written order for any controlled substance shall be signed in duplicate by the person giving said order or by his duly authorized agent. The original shall be presented to the person who sells or distributes the controlled substances named therein. In the event of the acceptance of such order by said person, each party to the transaction shall pre-

serve his copy of such order for a period of two years (2) years in such a way as to be readily accessible for inspection by any public officer or employee engaged in the enforcement of this chapter. It shall be deemed a compliance with this section if the parties to the transaction have complied with the federal law respecting the requirements governing the use of order forms."

The first sentence in § 21–28–3.11, relating to the signing of official written orders in duplicate, is predicated on a "person giving said order"–that is, an official written order–for the purchase of controlled substances. The statute next requires that the original copy of the official written order be presented to the person who sells or distributes the controlled substances. The necessary inference is that this requirement is imposed on the person giving the official written order. If the person to whom the original copy of the official written order has been presented then accepts the order, the statute requires "each party to the transaction" to preserve his copy of such order for two years.

■ The phrase "each party to the transaction" conveys an unambiguous and reasonable meaning when read in relation to the persons described in the first two sentences of § 21–28–3.11. When the person who sells or distributes controlled substances accepts the order from a person giving an official written order, those parties have transacted a contract. As the antecedents to the phrase "each party to the transaction," those persons are the parties whom § 21–28–3.11 requires to preserve their respective copies of official orders for two years following acceptance of an order. Thus, the person giving an official written order and the person who accepts that order constitute "each party to the transaction" upon whom § 21–28–3.11 imposes a record-keeping requirement.

The ultimate determination of whether defendant is a "party to the transaction" therefore depends upon resolution of the issue of whether he was the person giving the official written orders within the mean-

ing of § 21–28–3.11. It is in connection with this latter, issue that defendant's claims would have been more appropriately addressed. When we view his contentions as if they relate to this issue, defendant claims that he was not a person giving official written orders because under the alleged organizational hierarchy he was not in charge of ordering and receiving controlled substances. Similarly, defendant's argument against strict criminal liability follows from his claim that he was not the person giving official written orders and, therefore, should not be responsible for others' violations.

█ When read in context the § 21–28–3.11 language, "person giving said order" clearly refers to a person giving an official written order, but even the latter phrase does not explain itself; it is of doubtful meaning and therefore is ambiguous. Thus it must be construed. The language must be construed narrowly because failure to comply with the record-keeping requirement of § 21–28–3.11 may under § 21–28–4.02 result in the imposition of penal sanctions. *State v. Dussault*, R.I., 403 A.2d 244, 246 (1979); *State v. Simmons*, 114 R.I. at 18, 327 A.2d at 845. Thus, defendant " 'must be given the benefit of any reasonable doubt'," *Little v. Conflict of Interest Commission*, R.I., 397 A.2d at 888; *State v. Simmons*, 114 R.I. at 16, 327 A.2d at 845, in determining whether § 21–28–3.11 imposes a duty upon him in his capacity as owner of the pharmacy to preserve copies of official written orders.

In analyzing defendant's contentions in the requisite light, it becomes necessary to note that our Legislature did not enact the Uniform Controlled Substances Act in a vacuum. Rather, federal law provided the regulatory milieu in which our act was enacted, and our act represents an attempt "to establish a system of substances control which is, to the extent possible, uniform with the laws of the United States." § 21–28–1.01 B.5. The federal analogue to Article III of our act is Part C of the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. §§ 821–29 (1972). In enacting Part C, Congress sought to create "a 'closed' system of drug distribution for legitimate handlers." [9] One of the measures that Congress adopted to effectuate that system is 21 U.S.C.A. § 828, which authorizes the United States Attorney General to issue order forms and which also governs the use and preservation of such forms.[10]

In accordance with regulations promulgated by the Attorney General pursuant to 21 U.S.C.A. § 828, the United States Department of Justice Drug Enforcement Administration (DEA) issues order forms in triplicate on DEA Form 222C. *See* 21 C.F.R. §§ 1305.01–1305.05 (1979). With one exception, only persons who are registered under 21 U.S.C.A. § 823 to handle controlled substances may obtain order forms. 21 C.F.R. § 1305.04(a). Before issuing the serially numbered order forms, the DEA inserts, among other items, the registrant's name, address, and registration number. 21 C.F.R. § 1305.05(d). An order form may be executed by certain persons only on behalf of the registrant named thereon. 21 C.F.R. § 1305.04(b).

The defendant does not dispute that the official written order form that § 21–28–3.-11 adverts to and requires "each party to the transaction to preserve" is DEA Form 222C. The defendant contends, however,

---

**9.** H.R. Rep. No. 1444, 91st Cong., 2d Sess. 6 (1970) (1970 U.S. Code Cong. & Admin. News, pp. 4571–72).

**10.** Subsection (a) of 21 U.S.C.A § 828 (1972) renders the distribution of certain controlled substances unlawful "except in pursuance of a written order of the person to whom such substance is distributed, made on a form to be issued by the Attorney General." Subsection (d) of § 828 authorizes the Attorney General to issue order forms only to persons validly regis-

tered under 21 U.S.C.A. § 823 or to persons exempted from registration under 21 U.S.C.A § 822(d). When a registered person obtains an order form and pursuant to 21 U.S.C.A. § 828(a) gives it to a distributor of controlled substances, subsection (c)(2) of § 828 requires the person giving the order to make a duplicate. If the distributor then accepts the order, subsection (c)(2) of § 828 requires the person giving the order also to preserve the duplicate for official inspection over a two-year period.

that the person who signs and submits orders for controlled substances, if registered as the pharmacist at a location,[11] is the person who is subject to § 21–28–3.11. He points to copies of executed order forms introduced into evidence at his trial in support of this contention. All those copies bear the signatures of one or the other of the two individuals who served as the registered pharmacist at the Broad Street store during the period under audit. The defendant argues that one of those persons was in each instance the person giving an official written order and, as such, was a party to the transaction subject to the requirement of preserving copies of official written orders imposed by § 21–28–3.11.

▮ Examination of the first sentence of § 21–28–3.11 leads us to conclude that defendant's proposed application of § 21–28–3.11 to the facts of this case would require an unreasonable construction of that section. The sentence provides that "An official written order for any controlled substance shall be signed in duplicate by the person giving said order or by his duly authorized agent." This sentence indicates that the person giving an official written order is, under § 21–28–3.11, distinct from a duly authorized agent who signs the order. Thus, an agent who signs an order is not the person giving the order. This factor leads us to conclude that the person described in § 21–28–3.11 as the one giving an official written order is the person who is named as the registrant on each order form. Such a construction leads to a determination that the registrant named on the order form is a party to the transaction required

by § 21–28–3.11 to preserve copies of accepted orders. A defendant's liability under § 21–28–3.11 hinges, therefore, on whether he was the registrant named on the order forms or, if he not the registrant, whether he occupied a position in relation to the person determined to be the registrant by which position the registrant's failure to preserve order forms would be imputed to him.

In reaching these conclusions, we do not ignore defendant's argument that our failure to adopt his proposed construction of § 21–28–3.11 will result in the imposition of strict criminal liability on proprietors of pharmacies. We observe that defendant's argument is premised on an assumption that § 21–28–4.02(A)(3) imposes criminal liability for failure to keep records regardless of a person's intent. Otherwise, a proprietor who delegated such duties would be liable for an agent's noncompliance only if the proprietor knew or should have known of such noncompliance. Though we offer no opinion concerning the validity of defendant's assumption,[12] we accept it for purposes of analysis. In doing so, however, we must reject defendant's argument because his construction of § 21–28–3.11 merely shifts strict liability under § 21–28–4.02(A)(3) for noncompliance with § 21–28–3.11 to an agent of a registrant. If, as defendant assumes, § 21–28–4.02(A)(3) imposes strict criminal liability for failure to preserve order forms as required by § 21–28–3.11, we believe the Legislature intended to impose such liability on registrants under the act,[13] rather than on employees to

11. We observe that registration as a pharmacist under chapter 19 of title 5 of the 1956 General Laws (1976 Reenactment) is a requirement independent of registration under the Uniform Controlled Substances Act. *See* G.L. 1956 (1968 Reenactment) § 21–28–1.02(3), as enacted by P.L.1974, ch. 183, § 2.

12. The state, of course, does not take issue with defendant's assumption. In *State v. Gilman*, 110 R.I. 207, 291 A.2d 425 (1972) we took note of the Legislature's power to prescribe strict liability offenses within limits, *Id.* at 215, 291 A.2d at 430, but we construed the statute in issue as implicitly requiring the defendant's knowledge.

13. To the extent that § 21–28–3.11 imposes a requirement for preservation of order forms, we believe our construction achieves the uniformity with applicable federal law desired by our Legislature in § 21–28–1.01 B.5. Federal regulations charge a "purchaser" with preserving copies of each order form that has been filed. 21 C.F.R. § 1305.13(a). A "purchaser" is defined in 21 C.F.R. § 1305.02(b) to mean "any registered person entitled to obtain and execute order forms." It is therefore clear by definition that the person required by federal law to preserve copies of official written orders that have

whom registrants may delegate responsibilities imposed upon them by the act. This conclusion is buttressed by the existence of the two-year preservation requirement in § 21–28–3.11. If we ruled that an agent is a party required by § 21–28–3.11 to preserve order forms, § 21–28–4.02(A)(3) might well impose liability on an individual who had long since left the registrant's employ.

In so construing § 21–28–3.11, we rule that the essential factual finding in connection with deciding who is a party to the transaction for purposes of § 21–28–3.11 depends, under the circumstances of this case, upon determining who is listed as the registrant on the order forms in issue. We turn to consider the correctness of the trial justice's instructions to the jury in light of this ruling.

Fairly viewing the language in context of the entire charge, *State v. Howard*, 114 R.I. 731, 740, 339 A.2d 259, 264 (1975), we do not believe the instructions directed the jury to determine who was the registrant indicated on the order forms. The instructions implicitly subsumed that determination by directing the jury to determine whether defendant, himself, or Blanding and Blanding was a party to the transaction. The jury was not, however, directed to determine if defendant or Blanding and Blanding was the registrant, which is the factual predicate for determining that either was a party to the transactions. Without a specific instruction concerning the determination of that basic fact, the jury was left to speculate whether either defendant or Blanding and Blanding was a party to the transactions. As a probable result of the speculative nature of the trial justice's instructions, the jury requested a clarification of the instructions at issue.[14] In response, the trial justice told the jury to regard the transactions as sales between a buyer and seller and stated that the signature on each order form was not controlling, but he still did not instruct them that they should determine who was the registrant on each order form. Thus, we cannot reasonably conclude that the jury determined that defendant or Blanding and Blanding was a party to the transactions based on the essential factual determination of who was the registrant on the order forms.

We therefore hold that the instructions were inadequate because they did not direct the jury to determine whether defendant or Blanding and Blanding was the registrant named on the order forms.[15] Accordingly, we reverse defendant's conviction under § 21–28–4.02(A)(3) for failure to comply with § 21–28–3.11.[16]

been filed is the registrant named on the order form. The regulations recognize that the person signing an order form may not be the purchaser and accordingly provide: "The name of the purchaser, if different from the individual signing the order form, shall also be inserted in the signature space." 21 C.F.R. § 1305.06(e).

**14.** The record discloses that the request was made forty-five minutes after the jury retired from the courtroom to deliberate. The request illustrates the jury's attempt to obtain a clarification of the nebulous charge: "Does in fact the law of R.I. state that the owner is responsible for preserving written orders for controlled substances?"

**15.** In so holding, we offer no opinion concerning under what circumstances the law may impute a registrant's failure to preserve copies of order forms to any other person. In this case, the defendant has not directly disputed imputation of the registrant's omissions to him. Rather, he has contended only that persons other than the registrant are liable for any omissions.

**16.** In reaching this decision, we note that our examination of the order forms for the Broad Street store which were introduced into evidence reveals that Blanding and Blanding Drug Company has been inserted as the registrant. We shall not in a criminal case, however, employ a factual finding of this court to fill a void resulting from a trial justice's failure to instruct a jury on an essential element of an offense charged. "[T]here is no question that the due process clause continues to protect 'the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *In re John Doe*, R.I., 390 A.2d 920, 925 (1978); *State v. McGehearty*, R.I., 394 A.2d 1348, 1350 (1978). In a case in which a defendant has exercised his right to have a jury make the factual determinations, we will not usurp the jury's function.

If the state retries defendant under § 21–28–3.11, he may assert that § 21–28–3.11 was unconstitutionally vague prior to the construction that we apply in this opinion. We shall not address that constitutional challenge on this appeal, however, for two reasons. "[I]t is the well-established practice in this state that a defendant in a criminal case cannot challenge the constitutionality of a legislative enactment in this court unless he has first raised the issue on the record before the trial court with particularity and clarity." [17] *State v. Lerner*, 112 R.I. 62, 81, 308 A.2d 324, 337 (1973), *citing State v. Bower*, 109 R.I. 198, 199–200, 283 A.2d 39, 40 (1971) and *State v. DiMuccio*, 106 R.I. 219, 222, 258 A.2d 67, 69 (1969). The transcript before us fails to disclose, when defendant objected to the trial justice's instructions concerning § 21–28–3.11, that defendant articulated any constitutional challenge in his objection. We therefore shall not entertain the challenge defendant now raises in his appeal. Furthermore, defendant directs his constitutional challenge toward the construction of § 21–28–3.11 embodied in the trial justice's instructions. Such a challenge at a retrial would of necessity be directed toward the construction reached here by this court. For these reasons, we decline to resolve any constitutional challenge to § 21–28–3.11, and we offer no opinion on the merits of that issue.

## II

In arguing on appeal for reversal of his convictions of obtaining money under false pretenses in violation of §§ 11–41–4 and 11–41–5 and of giving false documents to a public employee in violation of § 11–18–1, defendant claims that admission of a letter for impeachment and as substantive evidence was improper under rules of impeachment and violative of the hearsay rule and the confrontation clause of the Sixth Amendment to the United States Constitution.

The defendant's wife, Mrs. Beatrice Udin, who was the bookkeeper for Blanding and Blanding, testified during cross-examination that she was unaware that Blanding and Blanding had double-billed the state for prescriptions it had provided to Medicaid recipients. The prosecution then sought to impeach Mrs. Udin's credibility by introducing a letter addressed to her husband from Joseph Gray, who had formerly been employed as a registered pharmacist at the Broad Street store. In a portion of that letter, Gray, the erstwhile employee, had written:

"I have been by the store on several occassions [sic] & it seems about the same. Perhaps if you hire me back I can start sending a few *bills* to the *state* if you known what I mean, Ha Ha After all we did pretty well in the short time I handled the situation. At least it paid many of the expenses. I have some new wrinkles." (Emphasis in original).

In support of its attempt to introduce the letter into evidence to impeach Mrs. Udin's credibility, the state maintained that in previous testimony Mrs. Udin had acknowledged that the letter was authentic and that she was aware of its contents prior to her testimony at trial. She had also recognized that the letter was incriminating, accepting the prosecution's characterization of the letter in her testimony. The state argued that the letter, viewed in light of her admitted prior knowledge of its contents, would serve to contradict her assertion at trial that she was unaware of double billing. The defendant objected to use of the letter for this purpose at trial and reasserts the objection on appeal.

We rule that the trial justice could not properly admit the letter for the purpose of impeachment. The credibility of a witness may be impeached through introduction of a prior inconsistent statement, either oral or written, which has been made

---

**17.** Because a vagueness claim under the Fourteenth Amendment was hardly a novel claim at the time of defendant's trial in 1978, *see, e. g., United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 999 (1954), we need not inquire to what extent, if any, our ruling in *State v. McGehearty*, R.I., 394 A.2d 1348 (1978) provides an exception to this rule. *See State v. Pope*, R.I., 414 A.2d 781 (1980).

by the witness himself. *State v. LaPlume*, 118 R.I. 670, 679, 375 A.2d 938, 942 (1977); *State v. Vaccaro*, 111 R.I. 59, 64, 298 A.2d 788, 791 (1973). Ordinarily, a statement made by a third person may not be used for this purpose unless the testifying witness has adopted the statement in some manner as his own. *Compare Miller v. Kennedy*, 11 Wash.App. 272, 291, 522 P.2d 852, 865 (1974) (statement inadmissible) with *State v. Dault*, 19 Wash.App. 709, 718, 578 P.2d 43, 48 (1978) (statement admissible). The state laid no foundation that Mrs. Udin had adopted the letter as her statement, notwithstanding the fact that she had read it and considered it incriminating. Under such circumstances, we know of no rule of evidence which would authorize the admission of Joseph Gray's letter for the purpose of impeaching Mrs. Udin's credibility. Thus, the letter, containing merely the contradictory extrajudicial statement of another, was not admissible for impeaching Mrs. Udin's credibility.

The defendant claims for the first time on appeal that the letter was inadmissible—also in light of the hearsay rule and the confrontation clause. The defendant thus views the letter as a statement admitted into evidence for the truth of the matter asserted. *See State v. Angell*, R.I., 405 A.2d 10 (1979).

In rebuttal the state contends that admission of the letter into evidence would be objectionable on hearsay and confrontation grounds only if it were admitted as probative evidence. Given this contention, the state claims that the letter was actually offered and admitted not for the probative weight of its assertions but rather for the purpose of impeaching Mrs. Udin's credibility. The state concludes, therefore, that defendant's hearsay and confrontation challenges to the admission of the letter are misplaced.

In our view, the record contradicts the state's claim that the letter was admitted solely for the purpose of impeachment. The transcript discloses that the trial justice admitted the letter also as probative evidence, notwithstanding the state's express purpose of introducing the letter into evidence.[18] We thus reject the state's contention that defendant's hearsay and confrontation challenges are misdirected. This conclusion, however, constitutes merely the first step toward resolving what amounts to a procedural hodgepodge.

■ We must yet determine whether we shall permit defendant to advance his hearsay objection on this appeal, though he failed to raise it at trial. On appeal, we shall not normally review objections to evidence that were not made at trial. *State v. Duggan*, R.I., 414 A.2d 788, 791 (1980); *State v. Crescenzo*, 114 R.I. 242, 253, 332 A.2d 421, 428 (1975). In a case raising a procedural issue similar to the one before us, the United States Court of Appeals for the Second Circuit ruled that when the defendant objected to admission of a letter at trial only on the ground of lack of connec-

---

**18.** When *ruling upon the admissibility of the letter at trial, the judge stated,*

"[T]he document does not become inadmissible as hearsay because she recognizes it, apparently from her testimony, that it is the document of Joseph Gray. She recognizes it as an incriminating letter, *according to her* testimony. Whether it is or not, has to be left to the jury eventually, but I don't see any impediment to the introduction of the letter as being hearsay and if the jury conceives the document to be inconsistent with her testimony, it may take that into account in assessing her credibility. The objection to the introduction is overruled."

This language can be interpreted to have meant that the hearsay rule was no bar to out-of-court statements offered for impeach-

ment. We conclude, however, that the trial justice meant that the hearsay rule was not a bar to admission of the letter as substantive evidence in addition to any impeachment effect. We base our conclusion on two factors. When ruling the letter admissible, the trial justice did not instruct the jury to limit their consideration of the letter for the purpose of assessing Mrs. Udin's credibility. More important, the trial justice stated in his instructions to the jury following the presentation of evidence that he admitted the letter "for reasons which do not relate to Mrs. Udin's testimony." It is clear that he admitted the letter as probative evidence when he instructed the jury, "You will have an opportunity to evaluate the letter and draw such inferences from that letter as you feel might properly be drawn * * *."

tion and foundation, his hearsay attack on appeal was precluded. *United States v. Marquez*, 424 F.2d 236, 239 (2nd Cir. 1970). *See Gill v. State*, Ind., 368 N.E.2d 1159, 1163 (1977); *Commonwealth v. Gray*, 357 Mass. 771, 257 N.E.2d 924 (1970). The circumstances attending defendant's failure to object in this case, however, cause us to depart from the general rule of waiver. When the state sought to offer the letter into evidence for the purpose of impeaching Mrs. Udin's credibility, defendant's objections were substantially limited to the inappropriateness of admitting it for that purpose. The trial justice ruled the letter admissible not only for impeachment, but determined furthermore that the hearsay rule did not constitute a bar to its admission as probative evidence. Thus, although defendant did not bring the hearsay issue to the trial justice's attention, the trial justice nevertheless ruled on the issue. At that point, interposition of a hearsay objection would have been an exercise in futility, and we therefore determine that under the circumstances defendant's failure to object will not bar review of his hearsay claim on appeal. *See State v. Plante*, 111 R.I. 386, 391, 302 A.2d 804, 807 (1973); *State v. Mancini*, 108 R.I. 261, 273, 274 A.2d 742, 748 (1971). Accordingly, we proceed to consider whether the trial justice erred when he admitted the letter as probative evidence.

■ The admission of Mr. Gray's letter as probative evidence runs directly contrary to our rule against the admissibility of hearsay evidence. The hearsay rule bars admission of an out-of-court statement offered to prove the truth of the matter asserted therein, unless the statement falls within an exception to the rule. *State v. Santos*, R.I., 413 A.2d 58, 70 (1980); *State v. Clark*, 112 R.I. 270, 274, 308 A.2d 792, 794–95 (1973); *McCormick's Handbook of the Law of Evi-*

dence § 246 at 584 (2d ed. Cleary 1972). We have in this instance a written out-of-court declaration being offered to show the truth of the matters asserted therein and thus resting for its value upon the credibility of the out-of-court declarant. This situation comes within the classic definition of hearsay. The state in its brief makes no attempt to persuade us that the letter was properly admissible as probative evidence under an exception to the hearsay rule. Neither do we discern such an exception.[19]

We therefore hold that the trial justice erred when he admitted Gray's letter into evidence both for the limited purpose of impeachment and for the truth of the matter asserted therein. In light of this determination, it is unnecessary for us to consider the constitutional arguments made by both parties in relation to the Sixth Amendment confrontation clause.

The defendant, of course, contends that the admission of Gray's letter constitutes reversible error. He relies on the claim that the trial justice in denying his motion for a new trial upheld the jury's verdicts under §§ 11–41–4 and 11–41–5 and under § 11–18–1 on the basis of inferences drawn from the statements contained in the letter. The state advances no argument to the contrary.

■ We consider the erroneous admission of evidence to be harmless if there was no reasonable possibility that the improperly admitted evidence could have influenced the jury's verdict. *State v. Bower*, 109 R.I. 198, 201, 283 A.2d 39, 41 (1970); *see State v. Andrews*, R.I., 390 A.2d 926, 931 (1978); *State v. Pugliese*, 117 R.I. 21, 27, 362 A.2d 124, 127 (1976). In making such a decision, we look to the record and attempt to judge what the probable impact of the

19. The record indicates that the trial justice believed that the hearsay rule would not bar admission of the letter as probative evidence because he characterized it as a declaration against interest by defendant. In his claim of error, defendant directs our attention to our ruling in *State v. Patriarca*, 112 R.I. 14, 308 A.2d 300 (1973), that declarations of an alleged coconspirator made after termination of a con-

spiracy may be admitted against only the declarant. *Id.* at 40, 308 A.2d at 316. According to defendant the record indicates that Gray's letter was sent after any alleged conspiracy was terminated. He concludes, therefore, that the hearsay-conspiracy exception is inapplicable. Our examination of the record leads us to concur with defendant's conclusion.

improperly admitted evidence would have been on the mind of an average juror. We then assume that the objectionable evidence had a similar impact on the members of the jury in the case before us. *State v. Bower,* 109 R.I. 198, 201, 283 A.2d 39, 41 (1971). The defendant has hampered our inquiry because he has submitted only a partial transcript of the testimony relevant to this determination. We conclude in the absence of a contraindication by the state, however, that the transcript of the hearing on defendant's new-trial motion constitutes an adequate record from which we can resolve the issue.[20] *Compare State v. Jennings,* 117 R.I. 291, 294, 366 A.2d 543, 545 (1976).

At that hearing in review of the evidence, the trial justice raised the factual issue of whether the defendant knew of Gray's activities while employed at Blanding and Blanding, which activities led to the filing of charges against the defendant under §§ 11–41–4 and 11–41–5 and under § 11–18–1. In concluding that the jury justifiably inculpated the defendant with knowledge of Gray's activities, the trial justice relied heavily on Gray's letter. The trial justice concluded that the letter "is sufficient under the law as submitted to the jury to implicate this defendant in this activity." Upon the record available we cannot reasonably infer that there was no reasonable possibility that the evidence could have influenced the jury's verdict. We therefore reverse the defendant's convictions on the one count under § 11–18–1 and on all four counts under §§ 11–41–4 and 11–41–5.

We do not reach the defendant's other assignments of error because of the decisions we reach on the issues discussed. The defendant's appeal is sustained, the judgments of conviction are vacated, and the case is remanded to the Superior Court for further proceedings.

20. Within the times stated, Sup.Ct.R. 10(b) requires a defendant to order from the trial court reporter a transcript of such parts of the proceedings not already on file as the defendant deems necessary for inclusion in the appellate record. If the defendant orders a partial transcript, he shall file and serve on the state a description of the parts he intends to include in the record and a statement of the specific points that he intends to raise on appeal. If the state deems a transcript of other parts of the proceedings to be necessary, the state shall order such parts immediately or procure an order from the trial court which requires the defendant to do so.