**STATE**

v.

**Brian E. REIS.**

No. 2001–173–C.A.

Supreme Court of Rhode Island.

Feb. 10, 2003.

Annie Goldberg, Aaron Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

In this appeal, the defendant, Brian E. Reis (Reis), asks this Court to set aside his 1999 conviction of conspiracy to possess more than five kilograms of marijuana. The defendant argues that the trial justice

erred in (1) admitting evidence of previous similar drug transactions between Reis and his alleged coconspirator, and (2) denying his motion for judgment of acquittal on the conspiracy charge.[1] We disagree and affirm the judgment of the Superior Court. The facts pertinent to this appeal are as follows.

# I

## Facts and Travel

On March 12, 1998, the Federal Express Drug Interdiction Team[2] asked Detective David Palmer (Det. Palmer) of the Rhode Island State Police (state police) to bring his narcotics-sniffing canine to the Federal Express building in Warwick, Rhode Island, to inspect a parcel that they suspected contained narcotics. The canine, which is trained to detect marijuana, cocaine, crack and heroin, sniffed several packages and positively indicated that the suspected parcel contained narcotics.[3] The package was addressed to Matthew Sepe (Sepe) at a Cranston address and it had a telephone number on the mailing label. It bore a return address from Robert Sepe in Tucson, Arizona, also with a telephone number. Detective Palmer determined, however, that neither of these telephone numbers corresponded to the addresses on the mailing label. Therefore, based on the canine's positive indica-

tion that the package contained narcotics and the false information contained on the mailing labels, Det. Palmer obtained a warrant to search the package. Detective Palmer, along with state police Detective Joseph Dubeau (Det. Dubeau), opened the package and found thirteen two-kilogram "bales" of marijuana heavily wrapped in cellophane.

After opening the package, Det. Dubeau disguised himself as a Federal Express delivery agent. He and several other members of the interdiction team rode in a replica of a Federal Express delivery van to the Cranston address printed on the mailing label of the package. When they arrived, Sepe was outside of his car waiting for the package. Detective Dubeau, who was outfitted with a Kel–Kit[4] transmitter, approached Sepe and asked him to show a license and sign for the package, which Sepe did. Detective Dubeau then went back to the van, retrieved the package and gave it to Sepe. As Sepe took possession of the package, the officers hiding in the Federal Express van rushed out and arrested him.

After reading Sepe his rights, Det. Palmer pulled him aside to question him privately. Sepe initially denied knowing what was in the package, but eventually admitted to Det. Palmer that he knew of the package's contents and he was sup-

---

1. Even though the parties refer to a motion to dismiss the charge, the correct terminology when challenging the legal sufficiency of the evidence in a jury trial is a motion for judgment of acquittal. *See* Super.R.Crim.P. 29(a). We refer to Reis's motion in such fashion.

2. The interdiction team is a task force composed of the Federal Drug Enforcement Agency, Rhode Island State Police and National Guard. The team goes to Federal Express, UPS and Airborne Express locations and inspects suspicious packages that are sent to Rhode Island from other places.

3. For a narcotics-sniffing dog to sniff a suspected package, the package is placed in an area containing between 100 and 300 boxes. The officer, in this case Det. Palmer, leads the dog to all of the boxes to sniff their contents. When the dog sniffs a package with contraband, he narrows in on the location where he smells the odor of narcotics and begins to breathe heavier, becomes somewhat frantic and wags his tail much more rapidly.

4. A Kel–Kit is a one-way transmitting device that the police use with undercover officers and witnesses cooperating in an arrest.

posed to pick it up and deliver it to Reis. Sepe said that Reis was waiting for him in a black Chevrolet Blazer at the Honey Dew Donuts on Reservoir Avenue. Two officers then drove to the Honey Dew Donuts and confirmed that there was a person in a black Chevrolet Blazer waiting in the parking lot.

Detective Palmer devised a plan in which he would hide under a blanket in the back seat of Sepe's car, and Sepe, who would be outfitted with the Kel–Kit, would get out of the car and meet Reis as planned. Sepe would then explain that Reis would have to pick up the package himself because Sepe's aunt was ill. Sepe and Det. Palmer proceeded with the plan, but upon hearing Sepe's story about his aunt, Reis asked whether the police were onto them. Sepe indicated that the police were involved and Reis ordered him to get back in his car and drive to Westerly. Sepe returned to his car and the police moved in and arrested Reis.

A grand jury charged Reis and Sepe with conspiracy to possess more than five kilograms of marijuana and conspiracy to possess marijuana with intent to deliver. Additionally, the Grand Jury charged Sepe with possession of more than five kilograms of marijuana. The Attorney General entered into an agreement with Sepe in exchange for his testifying against Reis and pleading *nolo contendere* to the reduced charges of conspiracy to possess less than five kilograms of marijuana and conspiracy to possess the same with intent to deliver. Sepe received a suspended sentence of eight years for each count, plus eight years of probation to run concurrently. At trial, a jury found Reis guilty of conspiring with Sepe to possess more than five kilograms of marijuana and found him not guilty of the charge of conspiring with Sepe to possess more than

five kilograms of marijuana with intent to deliver.

Reis timely appealed. In his prayer for relief, Reis asserts that the trial justice erred by (1) admitting evidence of prior drug delivery transactions between Reis and Sepe, and (2) denying his motion for judgment of acquittal.

## III

### Evidence of Prior Transactions

"It is well established that 'the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.'" *State v. Andreozzi,* 798 A.2d 372, 374–75 (R.I.2002) (quoting *Malinowski v. United Parcel Service, Inc.,* 792 A.2d 50, 53 (R.I.2002)). In this case, the trial justice admitted evidence of Reis's and Sepe's previous drug delivery transactions pursuant to Rule 404(b) of the Rhode Island Rules of Evidence. We will reverse the trial justice's ruling only if we find that he abused his discretion in applying Rule 404(b)'s exception to the prohibition of evidence of other bad acts. *See Andreozzi,* 798 A.2d at 374–75.

"It is well settled that evidence of past, uncharged criminal behavior of an accused is generally inadmissible in a criminal trial to prove a defendant's propensity to commit the crime charged." *State v. Pratt,* 641 A.2d 732, 742 (R.I.1994) (citing *State v. Brigham,* 638 A.2d 1043, 1044–45 (R.I.1994)). This is because the recognition that the "prejudicial effect of such evidence has been traditionally viewed as outweighing its probative value by acting to predispose jurors to believe a defendant's guilt." *Id.* (citing *State v. Colvin,* 425 A.2d 508, 511 (R.I.1981)). Additionally, admitting this kind of evidence presents

the risk that jurors might convict a defendant for a crime other than the one being charged. *See id.* (citing *State v. Jalette,* 119 R.I. 614, 624, 382 A.2d 526, 531–32 (1978)).

Rule 404(b) represents an exception to the above-stated general rule. *See id.* The rule allows the admission of prior bad acts if they are " 'interwoven' with the offense charged." *Pratt,* 641 A.2d at 742 (quoting *State v. Brown,* 626 A.2d 228, 233 (R.I.1993)). Past bad acts are also admissible to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." *Id.* (quoting Rule 404(b)). To protect against concerns raised in the previous paragraph "the trial justice must carefully weigh the probative value of the evidence against the danger of unfair prejudice * * *." *Id.* If the trial justice determines that the probative value does outweigh the prejudicial effect, he should offer "a specific instruction [to the jury] as to the limited purpose for which the evidence is being introduced." *Id.* (quoting *State v. Chartier,* 619 A.2d 1119, 1123 (R.I.1993)).

In the instant case, the trial justice allowed Sepe to testify at trial about his previous drug transactions with Reis. Specifically, Sepe testified that he had performed similar operations with Reis on two separate occasions. The first such instance was in December 1997, when Reis contacted Sepe and directed him to pick up a Federal Express package sent from Arizona that contained marijuana. Sepe picked up the package that Reis had address to him. Sepe met Reis at a restaurant in Westerly, Rhode Island, across the street from Reis's home. Reis was waiting in a black Chevrolet Blazer. After signaling to Reis that he had picked up the package, Sepe drove to Reis's home and made the delivery. In exchange for the delivery services, Reis gave Sepe $300 and four ounces of marijuana.

Sepe went on to testify that Reis repeated the process in February 1998. This time, however, the Federal Express package was larger than the previous package and Sepe delivered it straight to Reis's house without meeting him beforehand. Once again, Sepe received money and marijuana for his services.

Before trial, Reis sought to preclude any evidence regarding prior transactions in his motion *in limine.* He alleged that these previous dealings with Sepe were completely different from the March 1998 deal between the two because they were to meet in Cranston rather than in Westerly. Therefore, according to Reis, the Rule 404(b) exception to the inadmissibility of prior bad acts should not apply. We disagree.

There were at least three transactions between Reis and Sepe. All three times Sepe picked up a Federal Express package containing marijuana. Each time the package had an Arizona return address and Sepe was to deliver the package to Reis. Furthermore, Sepe received money and marijuana in consideration for his services in December 1997 and February 1998, and he testified that he would have been paid in the same manner had he not been arrested by the police. It is apparent to this Court that the three separate transactions between Sepe and Reis are interwoven and represent a common scheme or plan. We do not think the differences in the meeting places change the fact that each transaction was essentially a repeat of the previous one. Furthermore, the trial justice properly issued a limiting instruction to the jury that it should consider Sepe's testimony of the prior transactions only as they related to a prior course of dealing, common scheme, plan or preparation. Accordingly, we con-

clude that the trial justice did not abuse his discretion in admitting evidence of prior transactions between Reis and Sepe.

## IV

### Motion for Judgment of Acquittal

■ "In reviewing a claim of legal sufficiency of the evidence in the context of a motion for a judgment of acquittal, this Court applies the same standard as that applied by the trial court, namely, '[we] must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Kaba*, 798 A.2d 383, 393–94 (R.I.2002) (quoting *State v. Otero*, 788 A.2d 469, 475 (R.I.2002)). "If, by that standard, the trial justice finds the evidence enough as a matter of law to support the charge, he must deny the motion and send the case to the jury." *State v. Salvatore*, 763 A.2d 985, 990 (R.I.2001) (citing *State v. Tempest*, 651 A.2d 1198, 1218 (R.I.1995)).

■ Reis was convicted of conspiracy to possess more than five kilograms of marijuana. "Conspiracy is defined as a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." *State v. Mastracchio*, 612 A.2d 698, 706 (R.I. 1992). In this case, Reis and Sepe conspired to commit the same unlawful act; possession of marijuana. Reis avers, however, that possession of more than five kilograms of marijuana is a substantively different crime than possession of less than five kilograms of marijuana. Thus, Reis argues, he did not conspire with Sepe to commit the same unlawful deed. Reis further contends that the state's dismissal of the charge against Sepe for conspiracy to possess more than five kilograms of marijuana is the equivalent of an acquittal

and thus the law precludes him from being convicted of conspiracy for possessing more than five kilograms of marijuana. We disagree.

■ Marijuana is listed as a controlled substance in the Rhode Island Uniform Controlled Substances Act, G.L. 1956 chapter 28 of title 21 (the act). *See* § 21–28–4.01(a)(2). When interpreting the act, we are well aware that the General Assembly did not pass that legislation in a vacuum. *See State v. Udin*, 419 A.2d 251, 257 (R.I.1980). "Rather, federal law provided the regulatory milieu in which our act was enacted, and our act represents an attempt 'to establish a system of substances control which is, to the extent possible, uniform with the laws of the United States.'" *Id.* (quoting § 21–28–1.01(b)(5)). Therefore, federal law is helpful in our interpretation of the act.

The federal analogue to the act is the Drug Abuse Prevention and Control Act. *See id.* In *United States v. Kozinski*, 16 F.3d 795, 819–20 (7th Cir.1994), the court interpreted that act and held that "the quantity of drugs involved is not an element of the offense of conspiracy. * * * [I]t affects only [the defendant's] sentence." Therefore, the court concluded that, although conspiracy to possess one kilogram of cocaine is punished differently than conspiracy to possess eleven grams of cocaine, the crimes are the same; conspiracy to possess cocaine in violation of the law. *See also United States v. Todd*, 920 F.2d 399, 407 (6th Cir.1990); *United States v. Wood*, 834 F.2d 1382, 1390 (8th Cir. 1987).

The Rhode Island act is structured similarly to its federal counterpart. Section 21–28–4.01, entitled "Prohibited Acts A— Penalties," provides that "it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance."

Conversely, §§ 21–28–4.01.1 and 21–28–4.01.2, entitled "Minimum Sentence—Certain quantities of controlled substances," provide sentencing guidelines for violations of the act. The severity of the sentence under those sections depends upon the quantity of the illegal substance involved. Therefore, the former section defines the unlawful act whereas the latter sections merely provide sentencing guidelines for the commission of those unlawful acts.

In this case, Sepe pleaded *nolo contendere* to conspiracy to possess less than five kilograms of marijuana in violation of § 21–28–4.01.1. Under Rhode Island law, this is tantamount to Sepe's pleading guilty to conspiracy to possess less than five kilograms of marijuana. *See State v. Figueroa*, 639 A.2d 495, 498 (R.I.1994) (citing *State v. Feng*, 421 A.2d 1258, 1266 (R.I.1980)). Conversely, Reis was convicted of conspiring to possess more than five kilograms of marijuana in violation of § 21–28–4.01.2. Although the act punishes conspiracy to possess more than five kilograms of marijuana differently than it punishes conspiracy to possess less than five kilograms of marijuana, we hold that the crimes are the same; conspiracy to pos-

sess marijuana in violation of the law. Therefore, reviewing the evidence in the light most favorable to the state, it is clear that Reis and Sepe conspired for the purpose of committing the unlawful act of possessing marijuana as prohibited by § 21–28–4.01. Accordingly, the trial justice was correct when he denied defendant's motion for judgment of acquittal.

■ Furthermore, even if Reis's and Sepe's crimes were substantively different, we do not agree with Reis's contention that the rule of consistency precludes his conviction for conspiracy. The rule of consistency states that "one defendant in a prosecution for conspiracy cannot be convicted when all of his alleged coconspirators, be they one or more, have been acquitted or been discharged under circumstances which amount to an acquittal." *State v. Fontaine*, 113 R.I. 557, 558–59, 323 A.2d 571, 572 (1974) (citing *State v. McElroy*, 71 R.I. 379, 46 A.2d 397 (1946)). In this case, however, the circumstances in which the charges against Sepe were disposed of do not amount to an acquittal, therefore making the rule of consistency inapplicable.[5]

---

5. Although we are not ruling on the merits of the rule of consistency at this time, we doubt the wisdom of the rule. The rationale behind the rule of consistency is that "the acquittal of all but one potential conspirator negates the possibility of an agreement between the sole remaining defendant and one of those acquitted of the conspiracy and thereby denies, by definition, the existence of any conspiracy at all." *United States v. Bucuvalas*, 909 F.2d 593, 594 (1st Cir.1990) (quoting *United States v. Espinosa–Cerpa*, 630 F.2d 328, 331 (5th Cir.1980)). This rationale is predicated on the assumption that an acquittal is the equivalent of a factual determination by the jury that the government failed to demonstrate the defendant's guilt beyond a reasonable doubt. *See id.*

This underlying rationale has been substantially undermined by the United States Supreme Court. In *Dunn v. United States*, 284

U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 359 (1932), the Supreme Court held that in the face of inconsistent verdicts, "[t]he most that can be said * * * is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." Relying on *Dunn*, the Supreme Court stated in *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461, 468 (1984), that "[i]t is * * * possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense." Based upon this logic, several federal courts and state courts have eliminated the rule of consistency. *See United States v. Zuniga–Salinas*, 952 F.2d 876, 878 (5th Cir.1992); *Bucuvalas*, 909 F.2d at 597; *United States v.*

 Pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure, the state dismissed the charge against Sepe for conspiracy to possess more than five kilograms of marijuana. A Rule 48(a) dismissal is not an acquittal. *See Cronan ex rel. State v. Cronan*, 774 A.2d 866, 875 n. 10 (R.I.2001). We conclude that "as a simple matter of logic, the government's voluntary dismissal of a conspiracy charge against a defendant's only alleged coconspirator does not preclude proof beyond a reasonable doubt, at defendant's trial, that the defendant conspired with that same alleged coconspirator." *United States v. Lopez*, 944 F.2d 33, 40 (1st Cir.1991). Rather, it should be left to the jury to determine whether such a conspiracy existed. *See id.* Furthermore, by equating a voluntary dismissal of charges to an acquittal of those charges, we would be unwisely tying the hands of prosecuting attorneys by preventing them from entering into plea agreements with a coconspirator in a conspiracy case. Therefore, we conclude that the voluntary dismissal of the charge against Sepe for conspiracy to possess more than five kilograms of marijuana is different from an acquittal and does not preclude the conviction of Reis for conspiracy. Consequently, the trial justice correctly denied Reis's motion for a judgment of acquittal.

### Conclusion

Reis's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case may be returned to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.

---

*Andrews*, 850 F.2d 1557, 1561 (11th Cir. 1988); *United States v. Valles–Valencia*, 823 F.2d 381, 382 (9th Cir.1987) (mem.); *People v. Palmer*, 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234, 242 (2001); *Commonwealth v. Campbell*, 539 Pa. 212, 651 A.2d 1096, 1099 (1994). Several more have expressed doubt as to the continued vitality of the rule. *See United States v. Garcia*, 882 F.2d 699, 704–05 (2d Cir.1989) (relying on *Andrews*, 850 F.2d at 1561); *United States v. Mancari*, 875 F.2d 103, 104 (7th Cir.1989) (stating that *Valles–Valencia* "makes good sense"); *United States v. Dakins*, 872 F.2d 1061, 1065 (D.C.Cir.1989) (stating that *Powell* "cast[s] doubt" upon the rule). If a case comes before this Court in which the rule of consistency is directly at issue in a conspiracy case, we would consider reviewing the validity of that rule.